419 So.2d 981 (1982)
MINTZ & MINTZ REALTY COMPANY, INC.
v.
Marlin W. STURM
v.
WAGUESPACK, PRATT, INC.
No. 12744.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearings Denied October 6, 1982.
*982 Max Zelden, Zelden & Zelden, New Orleans, for plaintiff-defendant in reconvention-appellee.
Santo A. Dileo, New Orleans, for defendant-plaintiff in reconvention-appellant.
Steven K. Faulkner, Jr., Morphy, Faulkner, Simpson, & Dimaria, Metairie, for third-party defendant-appellee.
Before GARRISON, CIACCIO and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal from a decision by the district court awarding the plaintiff Mintz & Mintz Realty Co. $5,720.00 in an action in quanti minoris. The defendant also recovered $343.20 from Waguespack-Pratt as a partial return of a real estate commission.
On October 15, 1979, Marlin W. Sturm sold a house located at 1933-35 Milan Street, New Orleans, Louisiana, to the plaintiff. The house had been listed with Waguespack-Pratt, Inc. for $112,000.00. The agent handling the house for Waguespack-Pratt was Dorian Bennett. On August 3, 1979, the defendant and the plaintiff entered into a purchase agreement for the property. The purchase price of the house was to be $100,000.00. The purchase agreement stated that the property was to be sold in an "as is" condition. The act of sale passed on October 15, 1979, did not contain any reference to the "as is" provision in the purchase agreement.
Shortly after the act of sale, the plaintiff sent a carpenter to the house to fix a window frame. The carpenter alerted the plaintiff to the possibility of problems with the foundation of the house. The plaintiff then sent Herman Abry, an expert in the *983 area of foundations, who inspected the house and the foundation. Abry informed the plaintiff that a new foundation was necessary, as well as replacement of the sills and leveling of the house. The plaintiff had this work done and then sued the defendant for a reduction in the purchase price based upon the charges it had incurred in replacing the foundation and the sills and in leveling the house. The defendant filed a reconventional demand against the plaintiff and a third-party demand against Waguespack-Pratt and its agent Dorian Bennett. The trial court awarded a diminution in the purchase price for the costs of the new foundation and the sills, but refused to award damages for leveling the house because it was not necessary for the replacement of the piers. The court dismissed the defendant's demands against the plaintiff and Dorian Bennett and awarded the defendant $343.20 from Waguespack-Pratt, Inc. representing 6% (the commission percentage) of the amount that the purchase price of the house was reduced.
SILLS
The plaintiff received $1,920.00 for the replacement of the defective sill. The sill is that portion of the house which rests upon the piers and upon which the remainder of the structure sits. The defendant stated that he was aware that the front right portion of the sill had deteriorated and that he had informed Dorian Bennett, real estate agent for Waguespack-Pratt, of the condition of the sill. Mr. Bennett testified that he had been told about the deteriorated sill by Sturm and that he [Bennett] in turn had informed Mr. William Mintz, president of Mintz & Mintz Realty Co., about the sill. Mintz denied any knowledge of the deteriorated sill.
Dorian Bennett was an agent for Waguespack-Pratt. He had been referred to the plaintiff by its attorney. Bennett had worked with the plaintiff prior to the negotiations for the sale of the defendant's house. The defendant previously had listed his house with another realty company, but had been unable to sell the property. Bennett had known Sturm personally and persuaded the defendant to list the house with him. He testified that he was thinking of the possibility of selling the house to the plaintiff when he spoke with the defendant about listing the house. Bennett's actions were always motivated by his service for the plaintiff. His representation of the defendant as his listing agent simply was a device through which he could further the plaintiff's interests.
Sturm testified that he told Bennett about the rotted sill. Bennett testified unequivocally that he had been informed of the sill. According to the record, therefore, the only disagreement is between the plaintiff and Bennett.[1]
A real estate broker or salesman (agent) is not considered to be an agent within the purview of the mandate provisions contained in Article 2985 et seq. of the Louisiana Civil Code. E.g. Leggio v. Realty Mart, Inc., 303 So.2d 920 (La.App. 1st Cir. 1974). Knowledge of the defective sill, therefore, cannot be imputed to the plaintiff simply because its real estate agent was aware of the problem. Because there was some evidence at trial that the plaintiff had not been informed of the condition of the sill (the testimony of Willie Mintz to that effect), then the determination by the court below that the plaintiff was unaware of this defect was not manifestly erroneous.
Although Bennett was not an "agent" of the plaintiff or the defendant under the mandate provisions, he, nevertheless, owed a duty to disclose any material defects of which he was aware to the buyer. In Guidry v. Barras, 368 So.2d 1129 (La. App.3d Cir. 1979), the court held that a real estate agent has a duty to relay accurate information about the property he is selling. Although the court based its decision on La.R.S. 37:1447 (repealed in 1978), that was *984 omitted from the 1978 revision of the Louisiana Real Estate License Law, it is clear that the duty still exists. See La.R.S. 37:1455 A(32) (A real estate license may be revoked or suspended for licensee's "[f]ailure to disclose to a buyer, a known material defect regarding the condition of the real estate of which a broker or salesman has knowledge.") Cf. Kearney v. Maloney, 296 So.2d 865 (La.App. 4th Cir. 1974) (on rehearing). The trial court's decision that the plaintiff was unaware of the defect and Bennett's testimony make it clear that Bennett failed to disclose a material defect in abrogation of his duty to so do. The defendant, therefore should be allowed to recover that amount paid to the plaintiff for repair of the sill from Bennett and Waguespack-Pratt.
Although the defendant was aware that only a portion of the sill had deteriorated, he told Bennett that it would cost $1,000.00 to have the sill repaired. Anyone purchasing the house having knowledge that a portion of the sill was deteriorated to such an extent reasonably should have anticipated that the entire sill was damaged. Bennett and Waguespack-Pratt, therefore, are liable for the sill replacement.
FOUNDATION
When the plaintiff purchased the Milan Street house, there were several apparent defects in the structure of the property: (1) the front steps had pulled away from the house; (2) there were visible cracks in the stucco on the exterior of the house; and (3) the floors in the interior of the house were uneven. The piers located on one side of the house showed some damage as they were cracked and had pulled away from the house. There were a number of bushes surrounding that side of the house, and because of this growth representatives of the plaintiff did not look at the piers. Testimony indicated that there were no trees in that area.
Evidence adduced at trial showed that in the area where the house was located some sinking of houses due to settling of the ground does not necessarily mean that there has been any damage to the foundations. When, however, as in the instant case, there are a number of obvious problems present that are indicative, although not conclusive, of foundation damage, reasonably prudent buyers should be aware that such a problem may very well exist. The plaintiff called Herman Abry as an expert witness in the field of foundations. The following exchange occurred between counsel for the defendant and Abry:
"Q: Assuming you have cracks in the stucco, that you have these dips in the floors that you observed upon walking into the house and the fact that there is separation of these steps from the house, would that not indicate to the lay person that there is a problem with the house?"
"A: I would think that a person looking at that house could possibly see enough symptoms that they would have a problem."
Tr. at 110-11.
We find that the plaintiff should have been aware that a structural foundation problem existed prior to the act of sale. While one of the "symptoms" may not have been sufficient to apprise the plaintiff of the existence of a problem, the defects considered in their entirety should have been a warning.[2]
Also, the condition of the piers served as an additional signal that there was a problem with the foundation. The bushes surrounding the house were apparently dense, but not impenetrable. A prudent purchaser surely would have attempted to look at the exposed portion of the foundation and would have done so regardless of the foliage.
Our holding is not inapposite to those cases that hold that a purchaser is not required to climb on a roof to inspect it prior to sale. See, e.g. Russell v. Bartlett, 139 So.2d 770, 726 (La.App. 4th Cir. 1961). The inspection of a roof, as noted in Russell, *985 supra, is a somewhat hazardous procedure. Parting foliage, albeit dense foliage, in order to inspect a house's foundation is not, under normal circumstances, a dangerous undertaking. A representative of the plaintiff should have inspected the piers, and knowledge of the results of the inspection should be imputed to the plaintiff.
The plaintiff could have discovered that there was a problem with the foundation of the house by simple inspection and its failure to do so precludes the plaintiff from recovering in quanti minoris. La.C.C. art. 2521; see generally Magee Motors, Inc. v. Guerdon Ind., Inc., 328 So.2d 761 (La. App. 1st Cir. 1976).
Based upon the evidence contained in the record, including the testimony of Herman Abry and the photographs of the property, we find that the conclusion reached by the trial court, that the defect in the foundation was latent, is manifestly erroneous.
REAL ESTATE COMMISSION
The trial court awarded the defendant $343.20, to be paid by Waguespack-Pratt. This amount represented 6% of the reduction in the purchase price.
Because we have determined that the purchase price should not have been reduced for the cost of the new foundation and that the defendant will be entitled to receive the cost of sill replacement from Dorian Bennett and Waguespack-Pratt, this award of $343.20 should be reversed.
IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the trial court awarding the plaintiff $1,920.00 for the replacement of the defective sill is AFFIRMED. The $3,800.00 awarded to the plaintiff for the defective foundation is REVERSED. The judgment awarding the defendant $343.20 is REVERSED.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Marlin Sturm on his third party demand against Dorian Bennett and Waguespack-Pratt in the amount of $1,920.00.
AFFIRMED AND AMENDED IN PART REVERSED IN PART.
NOTES
[1] Furthermore, we note that Bennett testified that Mr. Mintz was upset when he learned that the sill was defective.
[2] We note that Mintz & Mintz Realty Co. was operated by William and David Mintz (father and son) who had purchased from fifteen to twenty properties previously, and apparently had some expertise in the area of real estate investment.