788 So.2d 498 (2001)
Sheila Lemaire and Michael LEMAIRE
v.
Thomas W. BREAUX, et al.
No. 00-CA-1826.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*499 Elizabeth D. MacKay, One Canal Place, New Orleans, LA, for defendant-appellant.
Wayne H. Carlton, Jr., New Orleans, LA, for defendants-appellants.
Murray A. Roth, Jr., Metairie, LA, for plaintiffs-appellees-cross-appellants.
George E. Escher, Law Office of Sheryl Story, Metairie, LA, for defendants-cross-appellees.
Court composed of Judges GOTHARD, ROTHSCHILD, and PATRICK M. SCHOTT, Pro Tem.
PATRICK M. SCHOTT, Judge, Pro Tempore.
This is an action in redhibition as to a residence in Marrero, Louisiana, purchased by plaintiffs, Mr. and Mrs. Michael Lemaire, from defendants, Mr. and Mrs. Thomas Breaux. The trial court awarded plaintiffs $4,000.00 for roof repairs against the sellers and against James Juneau Appraisal Services (Juneau) reduced by one-third for comparative fault on the part of plaintiffs. The court dismissed plaintiffs' suit against Greater New Orleans Home Service, Inc. (GNO) and Lee Cole and Lee Cole & Associates, Inc. (Cole). From the judgment the sellers, Mr. and Mrs. Breaux, and Juneau, as well as the plaintiffs, have appealed. The principal issue is whether the defect should have been discovered by plaintiffs prior to the sale had they made a simple inspection of the roof.
Plaintiffs employed Charline Carruba, a real estate agent, to assist them in locating a house to purchase. Because Mr. Lemaire was working offshore, Mrs. Lemaire was the principal contact with Carruba. On Mrs. Lemaire's first visit to the Marrero house, she and Carruba noticed stains on the ceiling, but the sellers said they had had problems with the roof five years previously and had repaired it. Carruba recommended a roof inspection as a precaution, but plaintiffs did not obtain one. *500 Under the terms of the purchase agreement, plaintiffs were entitled to a ten-day inspection period. During that period, GNO inspected the property and, later, Juneau appraised the property. Neither the inspection nor the appraisal noted problems with the roof. Four to six months after the act of sale, during what they described as the first hard rain after their purchase, plaintiffs experienced roof leaks in the two places they saw prior to purchasing the house and in two additional places in the master bedroom. They repaired the roof for $4,000.00 two years after the leaks occurred, and they filed suit against the sellers; the sellers' agent, Cole; the appraiser, Juneau; and the inspector, GNO. They alleged claims in redhibition against the sellers and negligent misrepresentation against the other parties. The trial judge dismissed plaintiffs' claims against GNO and Cole. He found the sellers liable in redhibition and Juneau liable for negligent misrepresentation, awarding plaintiffs $4,000.00, reduced by 30 percent for their own comparative fault for not obtaining a roof inspection.
The trial judge gave the following Reasons for Judgment:
... when the LeMaires were first shown the house, they along with Ms. Carubba, noticed the water stains in the ceiling. These stains in this Court's opinion were somewhat obvious. Even to an untrained eye this would have suggested that there had been a leakage problem or that a leakage problem still existed. In other words, there may have in fact been a hidden defect in the property. I believe that this possibility of a hidden defect rests squarely on the shoulders of the sellers and the appraisers by not disclosing such.
Under the laws of this State, the seller has an obligation of warranting a thing against hidden defects. A house that has a defective roof obviously fails to serve the purpose for which it was purchased.
The testimony from the LeMaires is that they discovered the leaks during the first hard rain after moving in. And this occurred, according to the testimony, some four to six months afterwards.
As to the appraiser, these stains were so obvious to the agent, Ms. Carubba, and to the LeMaires that they questioned the presence of the stains, it should have been noted in his appraisal report to the lending agency. This Court feels that if it had been noted in his report that the value of the house would have been adjusted or the lender would have taken other appropriate steps before proceeding to the closing. To a trained eye, such as an appraiser, some cosmetic indications should have indicated, under these circumstances, the presence of a much more serious hidden problem.
As to the plaintiffs, they inquired about the stains and it was suggested that they have a roof inspection completed. They failed to do this for one reason or another, although they should have been on notice that there may have been a possible problem. The LeMaires, although havingMr. LeMaire, rather, having no knowledge of roofs, according to the testimony that was presented, nevertheless climbed up onto the roof and looked at it. Regardless of what he was able to or unable to determine, they still did not act upon the advice they were given to have a roof inspection done.
Accordingly, I am finding that the defendants, James Juneau Appraisal Services and the Breauxs are jointly liable in the amount of four thousand dollars for the damages which were incurred by the LeMaires for what amounted to a *501 hidden defect which was not disclosed to them.
However, I am reducing that amount by one third as a result of the plaintiffs['] failure to act upon the advise [sic] to obtain a roof inspection prior to purchasing the property....
By their first specification of error in this Court, defendants argue that the trial court erred in granting plaintiffs a reduction in price after specifically finding that they should have been on notice of a possible roof problem and they still failed to obtain a roof inspection. This argument has merit. While the existence of a redhibitory defect gives a buyer the right to obtain a rescission of the sale or a reduction of the price, LSA-C.C. art. 2520, the seller owes no warranty for defects that should have been discovered by a reasonably prudent buyer, LSA-C.C. art. 2521.
Apparent defects are those that the buyer might have observed by simple inspection; hidden or non-apparent defects are those that a buyer could not have discovered by simple inspection. Grimaldi Const., Inc. v. J.P. and Sons Contractors, Inc., 96-470 (La.App. 5 Cir. 12/11/96), 686 So.2d 935, 938. Simple inspection involves more than mere casual observation. Rather, it requires the buyer who observes defects to conduct further investigation as would be conducted by a reasonably prudent buyer acting under similar circumstances. Whether an inspection is reasonable depends upon the facts of the case. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127, 1130-1131 (La.App. 1 Cir. 1992).
A trial court's determination that a defect is hidden is subject to the manifest error standard on appellate review. Reilly v. Gene Ducote Volkswagen, 549 So.2d 428 (La.App. 5 Cir.1989).
Plaintiffs both testified that when Mrs. Lemaire went with the relator to the house, she noticed several water stains on the ceiling and asked the sellers whether there were problems with the roof. The sellers told her that the roof was fifteen years old and they had problems five years before, but they had been repaired. They both admitted that their real estate agent told them to obtain a roof inspection, but they did not because they believed that the home services inspection would include a roof inspection. They claimed that no one told them that GNO was not going to inspect the roof.
Mrs. Lemaire specifically testified that the agent did not tell her that the GNO inspection would not encompass a roof inspection. She said she was not concerned about the stains because she trusted the sellers that the problems were repaired. She further testified that no one ever told her that an appraisal and an inspection were synonymous but that, if either the GNO inspector or the appraiser had recommended a roof inspection, she would have ordered one.
Plaintiffs own real estate agent contradicted their testimony. While she, too, testified that she and Mrs. Lemaire noticed the stains and she recommended that they obtain a roof inspection, she also testified that she specifically told Mrs. Lemaire that neither the GNO inspection nor the appraisal would reveal roof damage. According to the agent, Mrs. Lemaire indicated that she did not wish to obtain a roof inspection and that the GNO inspection would cover the roof, to which the agent replied that it would not. Mrs. Lemaire then said that the appraisal would detect roof problems, to which the agent also replied that it would not. She testified that she told the Lemaires "about three times" that they should get a roof inspection. Mrs. Lemaire told her that her husband *502 knew about "those things," so he would inspect the roof himself.
It is undisputed that the buyers observed the defect of stained ceiling tiles. This required the buyers to conduct further investigation. Mrs. Breaux and her agent did inquire about the stain from the sellers. She then knew that the stain was from a roof leak five years ago. Her agent then suggested that she obtain a roof inspection, at least once and perhaps as many as three times. And, even believing the buyers' testimony that the agent never told them that the GNO inspection and appraisal would not reveal possible roof problems, the fact that the agent told them to specifically order a roof inspection should have alerted a reasonably prudent buyer that the appraisal and the GNO inspection would not reveal roof problems. The buyers' inspection of the defect should not have ended simply with inquiring about the stains from the sellers. While this was their first house purchase and they apparently did not have much experience with roof defects, their agent, who did have experience with home purchases and even some experience with observing roof leaks, warned them to get a roof inspection. Also, the sellers made no representations that there would be no further problems with the roof. And a roof inspection was readily available to the buyers.
In considering whether the defect in the present case was one that might have been discovered by a simple inspection, we have compared it to other cases where this issue arose. For example, in Crow v. Laurie, 99-0648 (La.App. 1 Cir. 2/19/99), 729 So.2d 703, the purchasers of a used boat sued the sellers in redhibition after they discovered the transom was rotten. The trial court had concluded that the defect was not redhibitory because the buyers should have inspected the boat and discovered the defect. The court of appeal reversed, finding that, although the purchasers did have a duty to inspect the boat, the defect was not one that an average person would have discovered by simple inspection, as the transom was hidden underneath a top layer of fiberglass. In Mitchell v. Popiwchak, 95-1423 (La.App. 4 Cir. 6/26/96), 677 So.2d 1050, after the purchase of a home, the buyers discovered extensive termite and beetle damage. The sellers had testified that they informed the buyers that a beam was dry rotted and needed replacement and that problems of this sort occurred because of the position of the home on the water. The court held that the buyers were only required to perform a simple inspection, and that such an inspection would not have revealed this termite damage, and implicitly, that the buyers reasonably believed the sellers that the home being on the water caused the rotting boards.
The present case is clearly distinguishable. Unlike a defect under a layer of fiberglass or the kind of termite damage in the Mitchell case which was difficult to detect, and whose signs the purchasers reasonably believed was the result of another problem, the defect here was obvious. The stains on the ceiling clearly revealed the possibility of a leak in the roof. That signal, combined with the sellers' admission that they had a leak five years previously and the buyers' own agent's strong recommendation that they obtain a roof inspection, distinguishes this scenario from the ones found in cases like the ones cited and discussed above.
Because we find that the buyers could have discovered the roof defect by simply ordering a roof inspection, we also find that the defect was apparent. As such, the buyers' redhibition claim fails. Accordingly, we find that the trial court committed *503 manifest error by finding the sellers liable in redhibition.
Furthermore, in the present case, when the trial judge concluded that plaintiffs were at fault for failing to have the roof inspected and he reduced their recovery by one-third, he implicitly found that plaintiffs were under a duty to have the roof inspected and to discover the leak. In other words, he implicitly found that this was a defect that should have been discovered by a reasonably prudent buyer. According to LSA-C.C. art. 2521, this means that the sellers owed no warranty for this defect. Consequently, the trial court erred, as a matter of law, by assigning comparative fault instead of dismissing the suit.
We next turn to the appeal by Juneau, the appraiser. In his reasons for judgment, the trial judge found that Juneau should have noted in his appraisal the presence of the stains on the ceiling and had he done so, the lender would have adjusted the value of the house or would have taken some other action, which would have alerted the plaintiffs of the problem.
Juneau testified that he did the appraisal so the mortgage company could determine the amount of the loan it would make to plaintiffs. He observed the stains on the ceiling in the house, but he considered this to be cosmetic, so he did not report it. Juneau had a contractual obligation to the mortgage company but none to plaintiffs. He testified that purchasers do not see an appraisal before the sale and an appraisal is not intended to be an inspection report. The trial court did not find any direct duty flowing from Juneau to plaintiffs and neither do we find such a duty. Instead, the trial court found that Juneau had a duty to the mortgage company to note in his report the presence of the stains and the breach of that duty caused the mortgage company to take or not to take some action, which would somehow have served as a warning to plaintiffs that the roof might be defective.
There was no testimony or evidence to support those findings. What the mortgage company might have done is speculation. Juneau testified that he had been an appraiser for 13 years and he had no duty to note the presence of the stains. Plaintiffs offered no testimony such as that of another appraiser to prove Juneau had such a duty. We have concluded that plaintiffs failed to prove their case against Juneau.
Accordingly, the judgment appealed from is reversed and plaintiffs' suit is dismissed at their cost.
REVERSED AND RENDERED.