940 So.2d 195 (2006)
Desiree Valence Connell, Wife of/and Timothy J. CONNELL
v.
Judy Foley Davis, Wife of/and Neil Roy DAVIS, and Billiot and Carter Exterminating Company, Inc.
No. 06-CA-9.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2006.
Rehearing Denied November 3, 2006.
*197 Jack A. Ricci, Gary J. Giepert, New Orleans, Louisiana, for Defendant/Appellant/Century 21 Patio Realty, Inc.
Brian L. Reboul, John B. Krentel, Metairie, Louisiana, for Defendant/Appellee-2nd Appellant/Judy and Neil Davis.
Pierre V. Miller, II, New Orleans, Louisiana, for Plaintiff/Appellee-3rd Appellant/Desiree and Timothy Connell.
Panel composed of Judges THOMAS F. DALEY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
On appeal is a trial court judgment in favor of real estate buyers, Desiree Valence Connell and Timothy J. Connell (Connells), in this redhibition action. The Connells filed suit for relief after the purchase of a home with extensive termite damage. This matter has been before this court previously. In an unpublished opinion, we vacated the grant of a defense motion for summary judgment and remanded the matter for a trial on the merits.[1] After that trial, the court rendered judgment in favor of plaintiffs. That ruling is the subject of this appeal.
The Connells, plaintiffs herein, purchased a home in 1991 from Judy and Neil Davis (Davises), through Century 21 Patio Realty Incorporated (Century 21). Shortly afterward they uncovered extensive termite damage that required renovation of major parts of the home. In the original petition filed on November 16, 1992, the Connells named the sellers of the property, Judy and Neil Davis and Billiot and Carter Exterminating Company, Inc. (Billiot), the company hired by the real estate agent to conduct the termite inspection before the act of sale, as defendants. The petition asserted an action in redhibition and made claims of fraud, negligent misrepresentation and general negligence. The Davises filed a cross-claim against Billiot for indemnification. Billiot filed a cross-claim against the Davises.
On February 4, 1994, the Davises filed a third party demand against Century 21 for *198 breach of its fiduciary obligation to disclose facts to the sellers regarding termite infestation and damage.
The Connells filed an amended petition adding Century 21, and real estate agent, Ira Massman, as defendants making allegations similar to those alleged by the Davises in the third party demand. A second amending petition was filed by the Connells on October 13, 1995, which made claims of fraud against Century 21 and Ira Massman, the listing agent. A third amending petition added Charles Carter, who conducted the inspection and issued the termite certificates, as a defendant.
The Davises, Billiot and Century 21 filed motions for summary judgment. In addition, Century 21 filed an exception of prescription. After a hearing, the trial court granted the three motions for summary judgment, and declared the exception of prescription moot. An appeal to this court resulted in the reversal of that judgment and the matter was remanded for a trial on the merits.
Exceptions of prescriptions were referred to the merits.[2] A trial was subsequently conducted, after which the trial court rendered judgment in favor of plaintiffs. Specifically, the court rendered judgment against the Davises in the redhibition claim and reduced the sale price by $20,500.00. The court further awarded $20,000.00 in general damages on the negligence and fraud claims, holding the Davises, Century 21 and Billiot liable in solido. The judgment also awarded indemnification from both Century 21 and Billiot to the Davises, and dismissed with prejudice the cross-claim brought by Billiot against the Davises, and the plaintiffs' claim against Charles Carter. All exceptions of prescription were denied.
The plaintiffs filed a motion to amend the judgment on two issues. The first request was to correct the spelling of the Davises last name in part of the judgment[3]. The second argument presented to the trial court was the request for special damage awards. Plaintiffs asserted they were entitled to recover the finance charges paid as an incident to the sale, storage fees for appliances in the amount of $1,539.00, lost wages of $3,113.60, loss of annual sick leave and vacation time in the amounts of $7,248.85 and $6,918.00 respectively, and loss of use and enjoyment of the house during the time of the repairs, amounting to $8,250.00.
The defendants filed a motion for new trial seeking a reversal on the findings of liability and damages. The trial court granted the motion to amend to correct the typographical error, and denied the motions for new trial.
Defendants, Judy and Neil Davis and Century 21 have appealed to this court, seeking reversal of the judgments of liability and damages. Plaintiffs, Desiree and Timothy Connell have also filed an appeal seeking additional damages, a judgment of liability against Charles Carter, and a judgment of liability in solido against all defendants for all damages except attorney fees.
FACTS
The record contains a "Joint Stipulation of Facts" with supporting documents. The facts gleaned from the stipulations and documents show that Neil and Judy Davis inherited a home at 413 Transcontinental Drive in Metairie and listed the property for sale with Century 21. The Davises completed the property disclosure form in which they answered "no" to the question *199 concerning any termite infestation, and did not mention replacement of ceiling joists. Joe Sherwood, a Century 21 agent, showed the home to Timothy and Desiree Connell. Mr. Connell observed that the house was recently painted and appeared to be in excellent condition. The Connells made a written offer on the house of $47,500.00 that was accepted by the Davises the next day.
In connection with the sale, Century 21 wrote a letter to the Connells reminding them to arrange for a general inspection on the house. The Davises were required to furnish a termite certificate in accordance with the purchase agreement because it was a requirement of the loan. Century 21 contacted Billiot to conduct the inspection. Charles Carter made the inspection in which he found live termites and evidence of past damage under the porch. That original certificate was not furnished to either the Connells or the Davises prior to the act of sale. A note attached to that certificate, dated June 25, 1993 and signed by the president of Century 21, states:
To whom it may concern:
This is to advise that Mrs. Judy Davis has never seen the attached until this date.
These papers were in our files. It is believed that the certificate was filled out incorrectly and Mr. Carter made conflicting statements. Since he prepared a new certificate checking off a different box, it is assumed that the error had been corrected and that these papers are of no value. I will verify our assumptions with Mr. Carter.
Billiot was engaged by Century 21 to treat the property and issued a second certificate showing evidence of past infestation under the porch, but no damage. The Connells were notified that the inspection uncovered visible evidence of past infestation under the porch and that the property would be treated for termites. After getting this information, Mr. Connell personally inspected both porches before the closing. He discovered that the area under the front porch was not accessible from the outside and that the porch was made of concrete. Mr. Connell saw no evidence of termites under the rear porch. After this inspection he was no longer concerned about termites, and relied on the inspection and the certification made as a result of that inspection. Mr. Connell searched for defects in the house in the final walk-through, but found nothing except a plumbing leak. Mr. Connell had first hand experience with termite damage in his parent's home while he was living there. At the act of sale on November 15, 1991, Mr. Connell received a copy of the Wood Destroying Insect Report indicating there was no evidence of active termites and indicating that the signs of past infestation were under the porch.
Soon afterward Mr. Connell was painting interior walls. While scraping texture off, he found termite tunnels in the sheet rock that had been painted over. During the next few weeks he removed wall and floor coverings and found termite damage in other parts of the house. On January 13, 1992 the Connells applied for a building permit in which they sought to do extensive repairs and close in the garage to add a room to the home. They notified the Davises of the discovery of the termite damage by letter dated January 15, 1992.
John Henry, an employee of Building Services, Inc., inspected the property on two occasions and made a report. Mr. Connell made a videotape of the property on March 3, 1992. On March 26, 1992, Paul Holmes with Allstate Builders inspected the property and submitted a bid of $19,810.00. A second bid in the amount *200 of $23,080.00 was submitted by All American Home Improvements.
At trial Timothy Connell testified that he and his wife were looking for a home to purchase because they wanted to move out of the apartment in which they were living. They saw a house at 413 Transcontinental Drive in Metairie with a Century 21 sign indicating the home was for sale. The couple called Century 21 and was met by Joe Sherwood, an agent representing the company, who took them inside the house. The approximately 860 square feet home was renovated and freshly painted, and seemed to be in excellent condition. Because it was just what they were looking for, the Connells put in an offer which was accepted by the sellers, Judy and Neil Davis, the next day.
Mr. Connell testified that he read the property disclosure before making the offer on the house. He went over the items and nothing was checked off to indicate there was a defect in the house. He received a letter from Century 21 informing him of a ten day window for inspection of the property. Mr. Connell inspected the house and found it to be in "immaculate condition." He stated that he knew there would be a termite inspection because the FHA loan for which he applied required a termite certificate. Mr. Connell stated that he received a call from Joe Sherwood to arrange the final inspection. At that time Mr. Sherwood told Mr. Connell that the termite inspection showed a previous infestation under the porch. Mr. Connell looked under the back porch, but saw no signs of termite damage. The front porch was concrete and the underside was inaccessible. Mr. Sherwood said nothing about an active termite infestation and assured Mr. Connell that there was nothing to worry about. Mr. Connell relied on the inspection, Mr. Sherwood's knowledge, and the certificate supplied by Century 21 at the act of sale.
After the act of sale, the Connells decided to paint the bedroom before moving in. They began to scrape the texture off the wall in preparation for the painting and found termite tunnels in the sheetrock. Mr. Connell investigated further and found termite tunnels in the wood lathing behind the sheetrock and on the studs in the closet. On further inspection, termite damage was discovered in an enclosed attic when Mr. Connell broke through the ceiling sheetrock. Mr. Connell found that joists in the attic over the bedroom had been added, nailed directly to the old termite damaged joists, a fact that was not disclosed in the property disclosure provided by the Davises.
It was about this time that Mrs. Connell found out that she was expecting the couple's first child. Because they could not afford to continue paying rent on the apartment and the new house note, the Connells were forced to put their belongings in storage and move in with Mr. Connell's parents. Mrs. Connell was very upset over this uncertainty and cried often.
Mr. Connell explained that he has type 1 diabetes and is insulin dependent. He was diagnosed with severe diabetic retinopathy, a disease that occurs from the blood vessel damage due to diabetes and is at risk of losing his eyesight. During the month after the discovery of the termite damage, Mr. Connell suffered from severe gastrointestinal stress, which required a stomach endoscopy. Mr. Connell described Christmas that year as a "mess." Mrs. Connell was sleeping at her mother's home and was very distressed. Mr. Connell was staying with his parents temporarily and spending evenings at the new home removing drywall, carpets and padding to find the extent of the damage.
*201 Still confident that he could move his family into their new home before the birth of the baby, Mr. Connell attempted to put a new floor in the kitchen. Removal of the floor and cabinets revealed that area of the house also had extensive termite damage.
Mr. Connell called a building inspection service shortly afterward, and on January 15, 1992 Mr. Connell wrote a letter to the Davises to advise them of the termite damage.
Realizing that the Davises were not going to help, Mr. Connell called Billiot and told them of the termite damage. Billiot came out to re-treat the property. There were some negotiations between Mr. Connell and Mr. Carter regarding repair of the damage; however, the negotiations did not lead to a resolution. Estimates to repair the damage were about $22,000.00. Since the Connells had used all of their available cash to purchase the home, they made application for a Title 1 loan and used some of Mrs. Connell's retirement savings to complete the repairs.
Because of the extent of the necessary repairs, the Connells also decided to close in the garage to make a new living area during the construction. Mr. Connell took the next two years repairing the damage and constructing the addition. During that time the baby arrived and the family went back and forth between the parents' homes. The pressure of trying to work, repair the house and maintain his health was extremely difficult for Mr. Connell. Mrs. Connell also suffered severe emotional upheaval trying to care for her new baby while living with her parents and her in-laws.
Mr. Connell wrote to the State for help and took a video of the extent of the damage throughout the house, which is contained in the record.
Jack Readeau, the real estate appraiser for the Connell's lender, explained that he is not licensed to do mechanic, electrical or termite inspections. He makes a simple, cursory inspection of the property to see if there are any visible signs of defects. He found no evidence of termites in that inspection, and appraised the house for $48,000.00. Mr. Readeau did a second appraisal in October of 1995 for the Connells based on the damage reported in the bids and the cost to repair that damage. That value was $27,000.00.
John Schielder, a termite exterminating inspector, testified that he was contacted in November of 1991 by Lee Massman, an agent for Century 21, to do an inspection on the Davises' house. Mr. Schielder went under the house and saw "a lot" of termite damage in the sub-floor. He decided to "walk away from trouble" and not complete the inspection. Mr. Schielder explained that he was in business for himself, had only one helper, and felt the job would be too big to handle. He went back to the Century 21 office and told Lee Massman that he could not accept the contract. Mr. Schielder could not recall if he saw active termite infestation of if he told Ms. Massman of the damage.
Milton Schleismann, an environmental specialist manager for the Louisiana Department of Agriculture and Forestry, testified that he enforces the standards and regulations for termite and pest control companies. His job description includes performing routine termite inspections from eradication reports to make certain inspections are done in accordance with the state minimum treating specifications. He also performs termite inspections for homeowners when there is a complaint against an exterminating company. In connection with those inspections, Mr. Schleismann makes an evaluation of the job the termite inspection company has *202 done. His agency also reviews wood destroying insect reports used by companies for acts of sale of residential property for compliance with state regulations.
Mr. Schleismann explained that the guidelines and regulations in effect now were not in effect in 1991. At that time there was only a general regulation that a company had to inspect all of the accessible areas of the property, and identify all evidence of wood destroying insects covered by the report.
Mr. Schleismann inspected the Connells home after receiving a written request from the homeowner. He found the front porch and attic over the bedroom to be inaccessible for inspection. At the time of Mr. Schleismann's inspection, Mr. Connell was in the process of replacing the floor joists. Mr. Schleismann found evidence of termite damage in several areas under the home, predominately under the kitchen and bedroom. Additional termite damage was found in the open walls of the home.
Mr. Schleismann reviewed Mr. Carter's report and found it did not comply with standards of the time. It should have identified all areas damaged by termites. Mr. Schleismann also found other deficiencies in the report which were "too numerous to log." In the course of his investigation, Mr. Schleismann interviewed several people involved with the home including Steven Carter, Charles Carter's son. Steven was the manager of the Billiot office and explained to Mr. Schleismann that Charles Carter is elderly and became "disoriented and just didn't know what part of the house he was in." Mr. Schleismann's conclusion was that both the inspection and subsequent treatment were deficient.
Mrs. Davis testified they inherited the house at 413 Transcontinental from her husband's uncle. The house sat vacant for two years before the couple decided to sell it. Before listing the property, the Davises did some renovations. Two joists beneath the kitchen floor were replaced to repair damage done by leakage from the refrigerator. Renovations included replacement of the floor and countertops in the kitchen, the toilet in the bathroom, and the hot water heater. Carpet was replaced in the bedroom and hall and the outside trim and gutters were painted. The interior of the house was also painted. Mrs. Davis stated that after they painted the bedroom, they noticed that the ceiling was bowed. Access to that part of the attic is outside, through a small window. They climbed into the attic and found items left there by Mr. Davis' uncle, which they removed. The ceiling was removed and joists replaced. Dry wall was replaced and the whole ceiling painted. The Davises also painted the trim and the gutters and replaced the garage door. Mrs. Davis testified that they replaced some rotted wood on the garage, but did not see any evidence of termites. Mrs. Davis explained that when they filled out the disclosure form to list the house, they asserted the house had no termite damage because they never lived in the house and they did not see any when they did the renovations. Mrs. Davis stated that she answered every thing truthfully on the disclosure; however, she did not give a reason for not including the replacement of the bedroom ceiling joists on the disclosure form.
After the house was listed, Ira Massman called to say that a termite inspector went to the house and did not find termite infestation and quoted a price of $850.00 to treat it. Mr. Massman called back later to say the inspector did not want the job because he did not like working on older houses. Mrs. Davis did not know the name of that inspector.
After the Connells notified the Davises of the damage, Mrs. Davis went to Century *203 21 to try to get that original report because she thought it would help her to show that there were no termites. She found no report from Mr. Schielder. She did, however, find the initial report from Mr. Carter that showed an active termite infestation. When confronted with the report, Ms. Trinchard told Mrs. Davis there was a mistake and that Mr. Carter simply sent the wrong report. Ms. Trinchard offered to "file 13 it", a statement Mrs. Davis understood to mean that Ms. Trinchard wanted to throw the report in the trash. Mrs. Davis insisted the report be kept and that Ms. Trinchard put in writing that this report was not disclosed to the Davises. Mrs. Trinchard tried to call Mr. Carter at that time, but was unable to reach him. When contact was made with Mr. Carter, he said he went to do the inspection with Ira Massman. He found an active infestation, but was told to treat the house and issue a second termite certificate showing no active infestation. Mr. Carter stated that an older gentleman, he thought might be Mr. Connell's father,[4] was present at the time of the inspection. Mrs. Davis testified that she was never told about the report finding active termites. She relied on the report brought to the act of sale which showed no infestation. Mrs. Davis surmised that Ira Massman took the original report home and did not put it in the file. She admitted receiving the letter from Mr. Connell, but she considered it to be a "ruse" to try to get the $10,000.00 the Connells needed for renovations.
Melba Trinchard, the owner of Century 21, testified that the first termite report from Billiot showing the active infestation was found after the closing in the listing agent's file after his death. Ms. Trinchard stated that Mrs. Davis came to her office to review the file on the sale of her property after receiving Mr. Connell's letter regarding the termite damage. It was at that time that the report was discovered. Ms. Trinchard explained that Ira Massman had died around the time of the act of sale on the Davises' property and his wife, Lee Massman, found the certificate in his file at home. Ms. Trinchard denied offering to dispose of the report.
Lee Massman, one of the listing agents testified that she did not see any signs of termite infestation when she inspected the house. She also could not recall reading the first report showing an active infestation that was later found in her husband's file. She stated that she called Mr. Carter to do the inspection, but she did not attend the closing because she was ill. Mrs. Massman testified that her husband handled that part of the transaction. Mrs. Massman stated that she could not recall meeting Mr. Schielder; however, she indicated that her husband may have done so.
Desiree Connell testified at trial. Her testimony corroborates that of her husband regarding the time line of the purchase of the home and the initial projects the couple had planned for the home, such at painting the bedroom.
Ramsey Skipper, one of the contractors who submitted a bid on repairing the home testified that it would have taken about four and one-half to five months to complete the work.
LAW
As previously stated, three of the parties to this action have filed appeals. The Davises have assigned six errors, Century 21 has assigned four and the Connells have assigned five errors. Billiot has not filed *204 an appeal. For purposes of clarity we will address the various assignments as they relate to legal issues.
Redhibition
The Davises assert the trial court erred in finding them liable in redhibition to the Connells. The Davises argue that the termite damage was not a redhibitory defect because it was one that should have been discovered by a reasonably prudent buyer as provided in La. C.C. art. 2521.
We do not quarrel with the Davises' statement of the law. The seller warrants the buyer against redhibitory defects in the thing sold. La. C.C. art. 2525 A home has a redhibitory defect when it was so inconvenient or imperfect that, judged by the reasonable person standard, had the buyer known of the defect, they would never have purchased the home. Encalade v. Coast Quality Const. Corp., 00-926 (La.App. 5 Cir. 10/31/00), 772 So.2d 244, 247, writ denied 00-3229 (La.1/26/01), 782 So.2d 634.
However, La. C.C. art. 2521 provides that the seller owes no warranty for defects that should have been discovered by a reasonably prudent buyer. The obligation on the seller is to warrant the home against hidden defects which cannot be discovered by a simple inspection. Destefano v. Crump, 96-951 (La.App. 5 Cir. 4/9/97), 694 So.2d 424.
The issues to be determined in the matter before us are whether the termite damage is a redhibitory vice; and if so, was the defect apparent or was it a hidden defect. There is no real argument about whether the termite damage was sufficient to constitute a redhibitory defect. Rather, the Davises focus their argument on the whether the defect was apparent.
Recently in Lemaire v. Breaux, 00-1826 (La.App. 5 Cir. 4/11/01), 788 So.2d 498 at 499, this court explained:
Apparent defects are those that the buyer might have observed by simple inspection; hidden or non-apparent defects are those that a buyer could not have discovered by simple inspection. Simple inspection involves more than mere casual observation. Rather, it requires the buyer who observes defects to conduct further investigation as would be conducted by a reasonably prudent buyer acting under similar circumstances. Whether an inspection is reasonable depends upon the facts of the case.
A trial court's determination that a defect is hidden is subject to the manifest error standard on appellate review. (citations omitted)
In support of their position, the Davises refer this court to Amend v. Macabe, 95-0316 (La.12/1/95), 664 So.2d 1183.[5]Amend, is clearly distinguishable. In Amend the buyers refused to purchase the home after a termite inspection showed an active infestation. The sellers filed an action based in contract pursuant to the purchase agreement which contained a clause meant to avoid an action in redhibition. The clause stated that in the event any termite damage was discovered, the buyer had to provide the seller with an opportunity to repair the damage. The buyers refused to purchase the home because they were concerned the home may have hidden damage. The defendant/buyers argued unsuccessfully that the seller breached the purchase agreement by failing to evaluate whether the home had been structurally damaged by the termites. Based on *205 the terms of the purchase agreement, the court found that the sellers did not have a contractual obligation to inspect the home for structural termite damage, and that the buyers must forfeit the deposit for breach of contract.
In the matter before us, there is no such contractual issue. The question of whether the termite damage was hidden damage is a question to be decided on the facts presented. The trial court gave extensive reasons for judgment. The findings of fact upon which the judgment that the termite damage was a hidden redhibitory defect was based are a correct summation of the facts presented at trial. The trial court clearly rejected the Davises' argument that the evidence is insufficient to show that they had knowledge of some termite damage to the house. It is clear from the reasons that the trial court found the disclosure form filled out by the Davises persuasive. That form indicates the property never had termites, and that the Davises knew of no other problems or defects in the property. The form also fails to disclose the replacement of the ceiling joists above the bedroom ceiling which were nailed to termite damaged joists. This area was found to have extensive termite damage.
We find it significant that the termite report given to the Connells shows that past termite damage was "under the porch." Mr. Connell testified that he looked under the one porch that was accessible and found no sign of damage. The other porch is concrete and inaccessible. There is also testimony to show that the portion of the attic in which the termite damaged joists were replaced was inaccessible except by placing a ladder against the side of the house and climbing through a window.
Given the evidence offered at trial and the joint stipulation of facts, we cannot find error in the trial court's finding that the Davises are liable in redhibition to the Connells for hidden termite damage sufficient to be a redhibitory defect. This assignment is without merit.
The Connells argue that Century 21 and Billiot should also be held liable in solido with the Davises for redhibition damages with the exception of attorney's fees. We disagree. The law is clear that La. C.C. Articles 2520-2540 provide that the action in redhibition may be brought only by a buyer against a seller of property. Franks v. Royal Oldsmobile Co., Inc., 605 So.2d 633 (La.App. 5 Cir.1992). That is consistent with the understanding that redhibition is not so much directed toward who is at fault in causing the vice to exist but is directed toward warranty of vendor against vices in thing sold. Cox v. Moore, 367 So.2d 424, (La.App. 2 Cir.1979), writ denied, 369 So.2d 1364 (La.1979). The redhibition claim is between sellers and purchasers. A redhibition action cannot be maintained absent such relationship. Sanders v. Earnest, 34,656 (La.App. 2 Cir. 7/24/01), 793 So.2d 393.
A purchaser's remedy against a realtor is in damages for fraud, under La. C.C. art. 1953, et seq., or for negligent misrepresentation under La. C.C. art. 2315. Smith v. Remodeling Service, Inc., 94-589 (La.App. 5 Cir. 12/14/94), 648 So.2d 995.
Therefore, we find no merit in the Connells assertion that Century 21 and Billiot should be held liable in solido with the venders in redhibition.
Negligence and fraud
On the issues of fraud and negligence, the trial court ruled that the Davises, Century 21 and Billiot were liable in solido. Both the Davises and Century 21 contend that the trial court erred in *206 that finding. The Davises' argument relates to the fraud issue. The Davises argue that the trial court made its determination based solely on the testimony of the contractor, which is insufficient evidence to support the finding that they defrauded the Connells.
In the written reasons for judgment, the trial court made the following findings of fact:
(t)he Davises, Century 21 and Billiot all engaged in a series of acts directed to conceal past termite damage and infestation from the Connells. Several witnesses testified that upon a visual inspection, the Property appeared to be in good condition at the time of the sale. However, the evidence indicates that the Davises knew that extensive termite damage existed in certain portions of the home. Though they failed to include it in their list of repairs on the disclosure statement, the Davises admit that they replaced ceiling joists. These joists were nailed directly into other termite damaged beams. The Connells' construction expert, Ramsey Skipper, testified that the Davises could not have missed the extensive termite damage, particularly when they were nailing new joists directly into the damaged beams.
La. C.C. art. 1953 defines fraud:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
Given the above definition of fraud and the finding of fact by the trial court, which is supported by evidence in the record, we find no error in the judgment in favor of the Connells and against the Davises for fraud.
Century 21's argument concerning its liability is twofold. First it asserts it should not have been held liable to the Connells for the termite damage. Second, it asserts it should not be cast in judgment for indemnification to the Davises. The basis for both arguments is that it was the Davises who knew of the termite damage and did not disclose it to the Connells. Thus, counsel for Century 21 reasons, there is no evidence that Century 21 committed any act upon which liability can be based. He argues further that since it is the primary defendants (the Davises) who are a fault, there can be no indemnification.
In order for a purchaser to recover damages against a real estate agent representing a seller, the purchaser must establish either fraud or negligent misrepresentation on the part of the agent. Louisiana Real Estate Com'n v. Tessier, 99-279, 99-280 (La.App. 5 Cir. 7/27/99), 751 So.2d 265.
An action for misrepresentation arises ex delicto, rather than from contract. In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply the correct information, a breach of that duty, and damage to the plaintiff caused by the breach. Merlin v. Fuselier Const., Inc., 00-1862 (La.App. 5 Cir. 5/30/01), 789 So.2d 710. A real estate agent has a duty to relay accurate information about the property he is selling. Mintz & Mintz Realty Co., Inc. v. Sturm, 419 So.2d 981 (La.App. 4 Cir.1982); writ den. 423 So.2d 1163-1164 (La.1982). This duty extends to both vendor and purchaser and the broker may be held liable if the duty is breached. Guidry v. Barras, 368 So.2d 1129 (La.App. 3 Cir.1979).
In making the finding that Century 21 was liable both to the purchaser and the seller, the trial judge considered the testimony of John Schielder that Ms. *207 Massman called him to inspect the property, but he found it so termite-ridden that he refused to continue further with the job. Although Ms. Massman denies engaging Mr. Schielder for the inspection, she indicated that her husband, who was also an agent for Century 21, did. Either way, there is sufficient evidence in the record to support the trial judge's finding that Mr. Schielder was contracted by Century 21 and refused to treat the property because of the extensive termite damage. Further, testimony from the Davises shows that Mr. Schielder's findings were not conveyed to either the sellers or the purchasers.
When Billiot was subsequently contracted to do the inspection, the first report made showed active termite infestation. The second report does not. There is sufficient evidence in the record to support the trial judge's finding that Century 21 never disclosed the report showing an active termite infestation to either the purchasers or the sellers prior to the act of sale. Given that evidence, we find no error in the ruling that Century 21 breached its duty to both the purchasers and the sellers. Further, although the Davises knew of the prior termite damage in the attic, there is no evidence to show that they knew that there was an active termite infestation in the house at the time it was inspected by Century 21's contractor. The failure of Century 21 to disclose that knowledge is sufficient to support the trial court's finding that Century 21 is liable for indemnification to the Davises.
The Connells assert the trial judge erred in failing to impose liability on Charles Carter for the two termite reports he submitted for Billiot. While the trial judge imposed liability on Billiot, he did not impose liability on Mr. Carter personally. The Connells urge this court to reverse that ruling and hold Charles Carter personally liable in solido with the other defendants. The contract with Billiot was with Century 21 and the sellers. Billiot did not appeal the judgment against it and therefore we did not examine the liability of Billiot to the purchasers. The Connells do not assert any legal theory upon which to base a judgment of liability on Charles Carter personally, they merely state he should be liable. We are not persuaded that the failure by the trial court to impose liability on Charles Carter personally is error.
Prescription
Century 21 asserts that the trial judge erred in denying its exception of prescription. The original petition, seeking damages for hidden termite damage, was filed on November 16, 1992. Century 21 was added as a defendant in this action in February 1994 when the Davises filed a third party demand after the discovery of the termite certificate showing an active termite infestation. On April 5, 1995, the Connells filed an amended petition adding Century 21 as a defendant.
Century 21 filed an exception of prescription that was deferred to the merits of the case.[6] It is clear from the written reasons for judgment that the trial court found Century 21 to be a solidary obligor with respect to the negligence and fraud claims, and denied the exception pursuant to La. C.C. art. 3503. Further the court found that the amended claims related back to the original petition as provided for by La. C.C.P. art. 1153.
La. C.C. art. 3503 provides in pertinent part that:
When prescription is interrupted against a solidary obligor, the interruption is *208 effective against all solidary obligors and their successors.
La. C.C.P. art. 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
Because we find no error in the trial court's finding of fact or determination of liability, we find no error in the conclusion that Century 21 is a solidary obligor with the Davises on the issues of negligence and fraud. Further, we believe the trial court's reliance on La. C.C.P. art. 1153 is well founded. Accordingly, we find no error in the denial of the exception of prescription filed by Century 21.
Damages
On appeal to this court, both the Davises and Century 21 asserts that the damages awarded are excessive. The Connells argue that the damages should be increased.
In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price. La. C.C. art. 2541. The amount of the award is the difference between the sale price and the price that a reasonable buyer would have paid if he had known of the defects. Capitol City Leasing Corp. v. Hill, 404 So.2d 935 (La. 1981). One of the principal elements in formulating a reduction of the purchase price is the cost of repairs. Griffin v. Coleman Oldsmobile, Inc., 424 So.2d 1116 (La.App. 1st Cir.1982). In sales of immovable property the amount to be awarded is the amount necessary to convert an unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959); appeal after remand, 130 So.2d 414 (La.App. 4 Cir.1961)
In the matter before this court, the trial court awarded $20,500.00 in damages for redhibition. That award was derived from testimony and evidence of two contractors regarding the cost of repair of the termite damage, as well as testimony from a real estate appraiser concerning the value at the act of sale, before the termite damage was disclosed and the reduction in value once the damage was determined.
Century 21 and, by incorporation, the Davises argue the trial court should have considered the additional construction and changes made to the house that were not necessitated by the termite damage. They contend the damage award should be reduced to reflect those additional costs.
The Connells argue that the award should be increased to include finance charges actually paid.
In a successful action for a reduction of the purchase price, the amount to be awarded is the difference, at the time of the sale, between the value of the thing sold in its defective condition and its value as warranted. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959) However, with respect to the sale of realty, unless there has been an immediate resale, the difference is not readily and easily ascertainable. As a consequence this court has declared that in such a case the allowable diminution is `the amount necessary to convert the unsound structure into a sound one.' McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405, 408 (1952) ) or, as otherwise expressed, `the cost of repairs necessary to make the thing whole.' Wilfamco, Inc. v. Interstate Electric Co., 221 La. 142, 58 So.2d 833, 834 (1952) ).
The court concluded that the award of $20,500.00 was sufficient to compensate *209 the Connells for their claim in redhibition. The primary consideration in determining the extent of the reduction is the cost of repair. A rejection of a claim for additional expenses including unrelated repairs and mortgage payments are within the trial court's discretion. Kent v. Cobb, 35,663 (La.App. 2 Cir. 3/8/02), 811 So.2d 1206, 1220; writ den. 02-1011 (La.6/7/02), 818 So.2d 772.
On the negligence and fraud claim, the trial court awarded general damages in the amount of $20,000.00. Century 21 does not address this award in its brief to this court. The Davises assert that the award is excessive, but do not provide this court with any arguments to support that proposition.
The Connells argue the award is "grossly inadequate." They argue the award should be increased to $50,000.00 to properly compensate both the Connells for the mental anguish, inconvenience, aggravation and stress endured for the two and one-half years of construction.
We note that the Louisiana Supreme Court has ruled that much discretion is accorded the trier of fact in fixing damage awards. Because of this vast discretion, an appellate court should rarely disturb an award of damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The Youn court explained:
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
(citations omitted)

Id., 623 So.2d at 1260.
Given that restrictive appellate review of damage awards, and the facts of the matter before us, we cannot find a clear abuse of the trial court's discretion in the redhibition claim. The figure properly awarded in redhibition is a fair representation of the estimates of the cost to fix the termite damage. We cannot find the rejection of any additional claims including finance charges is an abuse of the trial court's discretion.
Further, we find that a reasonable trier of fact could have found that an award of $20,000.00 is appropriate for general damages in the action for negligence and fraud. Accordingly, we cannot consider prior awards to make a change in either the redhibition or the general damage award.
For the foregoing reasons, we affirm the judgment before us on appeal.
AFFIRMED.
NOTES
[1] Connell v. Davis, et. al, 96-1032 (La.App. 5 Cir. 4/29/97)
[2] The other two defendants also filed exceptions of prescription in prior pleadings.
[3] The judgment incorrectly refers to the Davises as "Harris" in some clauses.
[4] Mr. Connell's deposition is contained in the record. He denies being at the termite inspection or ever meeting Mr. Carter.
[5] Amend is the case originally used as support by the trial court in the grant of the defense motion for summary judgment, and its interpretation was influential in this court's decision to overturn the trial court's ruling.
[6] The Davises also filed an exception of prescription which was referred to the merits and denied. However, they have not assigned that ruling as error.