BROWN, Chief Judge.
|! Purchasers of real property brought this action in redhibition and fraudu *1223 lent/negligent misrepresentation against the seller and the seller’s real estate agent and broker. The seller, Laura DeLaCruz, had moved to Nevada and was served pursuant to Louisiana’s long arm statute. She did not answer the lawsuit or appear at trial. A preliminary default was entered and its confirmation followed the trial. The trial court found for plaintiffs and awarded plaintiffs $109,891.66 in redhibition against the seller, DeLaCruz. The seller’s real estate agent and broker were found liable for negligent misrepresentation in solido with the seller for $66,164.88. Plaintiffs’ motion for new trial sought to increased the damages awarded and was denied. Plaintiffs appealed. Defendants did not answer or file their own appeal. We affirm in part, reverse in part and render.

Facts

Plaintiffs, Jack and Toye Bailey (“Baileys”), purchased a house located on 2380 Covington Circle, Shreveport, Louisiana, on October 29, 2004, for $415,000. Plaintiffs were represented by a Coldwell Banker real estate agent, Sue White (“White”). The seller, Laura DeLaCruz (“DeLa-Cruz”), was represented by defendant, Mary Bamburg (“Bamburg”),[1] who was also a real estate agent affiliated with defendant, Coldwell Banker.
In February 2004, approximately nine months before the sale to the Baileys, DeLaCruz purchased the Covington Circle house and was also represented in that previous transaction by Bamburg. Before completing that purchase, DeLaCruz paid to have two inspections conducted on the home, 12both of which revealed some moisture and structural issues. One inspection was completed by John Worthey (‘Wor-they”). The second inspection was performed by World Inspection Network (“World Inspection”).
Worthey, a general contractor, who was a certified mold, moisture and EIFS[2] inspector, conducted a thorough inspection of the exterior and interior of the house. He specifically focused on the interior and stated that he used instruments to scan all interior portions. He concluded: “This residence is well constructed overall. The exterior finish system (EIFS) is in need of repair, but can be made sound and dry utilizing known repair methods ... The areas in need of repair were caused by application errors and lack of attention to construction details ... The interior was found to be dry and sound and I find no red flags that would warrant the testing for toxic molds at this time.”
Worthey oversaw the repairs that were made to the Covington Circle house by Reggie Doe and Dowden Plastering. When the exterior spots where Worthey had found moisture were taken down, he looked for and found no signs of mold. Worthey was satisfied that the repairs he recommended were completed and problems he listed were fixed. These repairs were paid for by the seller.
On October 4, 2004, the Baileys entered into a buy/sell agreement with DeLaCruz. The Baileys were provided with a Louisiana Residential Disclosure Form in accordance with La. R.S. 9:3894(B) and 9:3199(B). On the form, DeLaCruz and *1224 Bamburg responded negatively to all inquiries [.^concerning damage to the property including but not limited to: water damage, existing damage, and mold damage.
The buy/sell agreement gave the Baileys five days from October 5, 2004, to conduct a home inspection. The Baileys relied upon the opinion of their realtor, Sue White, who was affiliated with Coldwell Banker, she assured them that an inspection had been performed on the house during the DeLaCruz purchase and it was good for one year. Relying on this statement, the Baileys performed only a walk-through inspection.
At the closing, the Baileys were only given one of the two inspection reports performed during the DeLaCruz purchase, that of World Inspection. However, they were not given the entire World Inspection report, just three pages of this document. One page contained the Building Inspection Summary which listed six items that needed attention. The first item listed was “Exterior Structure, Siding Condition: maintenance — The exterior siding is in need of attention or repairs. There is a crack in the brick veneer under the upper right window and on the side at the rear of the home. These are not structural but should be sealed with caulk to prevent moisture intrusion.” The summary also noted that the exterior finish on the patio doors needed attention. Other minor issues were listed. The summary found that gas furnace, heating pump and cooling operations were all normal.
Omitted portions of the World Inspection report included 16 pages of worksheets which covered 17 specified categories. The items needing attention in the summary were noted on the worksheets. Significantly, in the 17th and last category, it is stated “Toxix(sic) mold detection and testing is ]4NOT within the scope of a home inspection. This home inspector is not a qualified professional mold expert.” At the time of the closing, the Baileys inquired as to whether the repairs referenced in the World Inspection’s summary had been completed. Both White and Bamburg indicated that they had been.
Upon moving into their new home, the Baileys hired Donnie Mclnnis to remodel a television cabinet in the living room. Mclnnis discovered mold, moisture and water intrusion on the inside of the sheet-rock. The Baileys then hired their own inspector who informed them that the “flashing was not properly installed for EIFS, the windows of the home were not properly installed, sealed, or caulked, the brick fascia on the home was not properly installed, there were severe structural defects in the home, there were no weep holes in the brick, the EIFS was not properly applied, there were issues with the base boards in the garage, and there was evidence of water intrusion and mold in more than two places.” Two additional air inspections determined the presence of three types of mold.
On October 25, 2005, Jack and Toye Bailey, individually and on behalf of their three minor children, filed suit against De-LaCruz, Bamburg, and Coldwell Banker, alleging breach of mandatory obligations under the property disclosure statute, breach of duties of real estate agents, fraud, bad faith breach of contract, breach of warranty, detrimental reliance, negligent misrepresentation, deliberate misrepresentation, conspiracy, and redhibition.
The gist of the complaint is that the Baileys relied, to their detriment, on representations of Coldwell Banker, Bam-burg, White and DeLaCruz and the mandatory disclosure form. They alleged that *1225 they would not have | .¡purchased the house if the mold and water intrusion had been disclosed. They claim that all defendants are “fully liable individually and in solido for all damages ... as deliberate tortfea-sors and violators of the mandatory disclosure laws from the date of sale ...” The Baileys continued to reside in the home and were living in the home on the date of trial in 2010.

Discussion

Findings of the trial court

The trial court found that there were structural defects to the home. In particular, multiple areas of water intrusion, flooding and mold, “which could not be discovered by simple inspection ...” The trial ' court found that DeLaCruz had knowledge of moisture/water problems, mold and structural defects in the house but failed to disclose these problems to the Baileys. As stated, DeLaCruz did not answer this lawsuit or appear.
In the written reasons for judgment, the trial court made the following finding:
The court finds that Coldwell Banker and Bamburg breached its duty to the Baileys. They were clearly aware of the moisture/water problems and the mold in the home but failed to provide this information to the Baileys. In fact, Bamburg signed the disclosure form indicating that there had been no water intrusion with respect to the property and there was no mold in the home.
Bamburg testified that she had no knowledge of mold. She had knowledge of the two inspection reports when DeLa-Cruz purchased the house and neither report identified any mold issues. Both reports indicated water intrusion. Worthey testified that he informed Bamburg and DeLaCruz that these problems were fixed. Defendants, however, did not appeal or answer this appeal to challenge the trial court’s finding.
• LThe trial court limited its remedy to a reduction of the price rather than a rescission of the sale. The court determined that the damages would be the amount necessary to convert the house into a sound structure.
The trial court found that DeLaCruz, Bamburg and Coldwell Banker were liable in solido for negligent misrepresentation under La. C.C. art. 2315, in the sum of $66,164.88. The trial court held DeLaCruz individually liable for damages resulting from redhibition in the amount of $109,891.66. The judgment stated that “these amounts include the award for all damages made by this court.” Judicial interest would run from the date of judicial demand. Exactly how the court came up with these figures was not explained; however, the Baileys’ exhibit 51A shows:

Itemized List of Damages Under Redhibition:

Robert Layfield (entry way, dining rm., floor repair) $2,890.00
Harkey Homes $6,375.00
ServPro $485.75
Appliance Expense $1,869.00
Pierce Plumbing $2,852.21
Jay Deaton Rub Repair $100.00
Custom Lawn Care $1,085.00
Bobby Greene Plumbing $6,308.87
Mike McWaters $1,700.00
Solomon, Inc. $1,180.00
Show Case Kitchens & Bath (Mstr.shower) $9,703.00
Custom Finishes (Mstr. bath-paint and drywall) $1,428.00
Ark La Tex Irrigation $2,575.00
*1226 Tiger Construction (wood fence) $975.00
Matthews Landscape (installing drains) $2,200.00
Matthews Landscape (resurfacing backyard) $2,000.00
Total Repairs made on the House Defects $43,726.83

Itemized List of Damages from Mold Problem:

Harkey Homes $24,425.00
Clean Air $13,641.20
SRP Environmental $4,245.00
Air Ref $3,281.25
House of Carpets (Floors only) $12,748.52
Porters $632.01
Donnie Mclnnis $7,191.85
Total Damages Caused by Mold/Water Intrusion $66,164.83
17Total Repairs and Damages $109,891.66
Thus, there was one award of $109,891.66 with the real estate agent and broker being liable with the seller for a portion of the award.

Motions for New Trial

Defendants, Bamburg and Coldwell Banker, filed a timely motion for new trial on October 30, 2011, that addressed two different issues, whereas the Baileys’ motion for new trial was submitted 14 months later. The court entered a judgment on June 28, 2013, granting, in part, Bamburg and Coldwell Banker’s motion for new trial by amending the amount of in solido damages from $70,000 to $66,164.83.
In their motion for new trial, the Baileys attached exhibits showing that they sold the Covington Circle home for $430,000 and again used White to represent them in the sale. This sale occurred after the trial. They claim to have paid a commission of $25,800 to Coldwell Banker and other costs including moving costs for a net loss of $24,039.74. Their exhibits with the new trial motion listed other costs to preserve the property, as well as general damages and attorney fees. Jack Bailey is an attorney and represented his family in this lawsuit.
In brief, the Baileys argued that “[T]he trial court’s judgment should be vacated, set aside, and remanded so the trial court can issue a new judgment on all issues and in light of the new evidence proffered by the Baileys.”
There are no limitations on the authority of the trial judge to hear witnesses or change the judgment, regardless of which party applied for the |snew trial. Nichols v. Hodges, 385 So.2d 298 (La.App. 1st Cir.1980), writ denied, 386 So.2d 355 (La.1980).
According to the Louisiana Code of Civil Procedure, once a motion for new trial has been granted in a non-jury case, either party may offer new evidence. La. C.C.P. art.1978 states:
It shall not be necessary in a non-jury trial to resummon the witnesses or to hear them anew at a new trial if their testimony has once been reduced to writing, but all such testimony and evidence received on the former trial shall be considered as already in evidence. Any party may call new witnesses or offer additional evidence, and with the permission of the court recall any witness for further examination or cross-examination as the case may be. However, the parties shall not be precluded from producing new proofs, on the ground they have not been offered on the first trial ...
*1227 Thurman v. Star Electric Supply, Inc., 283 So.2d 212 (La.1973), held that the trial court may grant a new trial on “all issues despite requesting a new trial on only a few multiple issues.”
When a party seeks a new trial on the basis of newly discovered evidence, the party must demonstrate that he or she made every reasonable and diligent effort to procure the evidence before trial. La. C.C.P. art.l972(2); 1 La. Civ. L. Treatise, Civil Procedure § 13:2 (2d ed.).
The sale of the house after trial and the added losses in that sale may be new evidence; but, the remaining exhibits were not newly discovered and were cumulative. Further, the sale of the house would not affect the outcome of the cause. See Brousseau v. Tucker, 479 So.2d 446 (La.App. 1st Cir.1985). The exhibit presented at trial of the total repairs and damages is exactly the same as the proffered exhibit in the Baileys’ new trial motion. The damage award pertaining to the reduction in the sales price was Rproperly based upon the cost of repairs which did not change after the initial trial. The trial court did not abuse its wide discretion in denying the Baileys’ motion for new trial.

Legal Principles

The standard of review in cases regarding findings of fact is manifest error. In order to reverse the fact finder’s determination of fact, the reviewing court must review the entire record and find that a reasonable factual basis does not exist for the finding, and determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Detraz v. Lee, 05-1263 (La.01/17/07), 950 So.2d 557. Whereas, the appellate review of questions of law is to determine whether the trial court was legally correct or incorrect. Johnson v. Ledoux, 42-090 (La.App.2d Cir.05/16/07), 95 So.2d 911.
Louisiana civil law divides substantive private law into three categories: conventional obligations (contracts), delicts (torts), and property. In this case, contracts and torts intersect. There are fundamental differences between the two.
Saul Litvinoff, 6 Louisiana Civil Law Treatise, The Law of Obligations § 16.18, at 532 (2013), observed:
There are however instances where after asserting that the same act may be a breach of contract and a tort at the same time, a Louisiana court will grant the aggrieved party redress through a combination of the remedies allowed for one and the other kind of wrongful act, which means that a tort need not necessarily absorb a contract that bound the wrongdoer and victim, nor need a contract necessarily displace a tort.
[[Image here]]
[I]t is quite clear that in those instances Louisiana courts favored a cu-mul, if not of the actions to be brought by an aggrieved party, of the remedies to which such party is entitled. (Emphasis added).
| inLa. C.C. art. 2520 provides that:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally 
*1228
useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

(Emphasis added).
A buyer’s remedy against a real estate agent is not in redhibition but is based in fraud and negligent misrepresentation. Hollingsworth v. Choates, 42,424 (La.App.2d Cir.08/22/07), 963 So.2d 1089; Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir.1978), writ denied, 355 So.2d 549 (La.1978).
As to the tort action of negligent misrepresentation this court in Davis, supra at 1065 stated:
Absent a vendor-vendee relationship, there can be no redhibitory action. Plaintiffs’ remedy against the realtors is in damages for fraud under La. C.C. art. 1847(9), or for negligent misrepresentation under La. C.C. art. 2315. White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2d Cir.1974).
Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction. La. C.C. art. 1953. Shelton v. Standard/700 Assoc., 01-0587 (La.10/16/01), 798 So.2d 60.
InThe buyer’s action against a realtor for negligent misrepresentation arises ex delicto, under Civil Code article 2315. Davis, supra. In order for a plaintiff to recover based upon negligent misrepresentation, the defendant must possess a legal duty to supply the correct information, there must be a breach of that duty, and the plaintiff must have incurred damages as a result of the breach. A real estate agent has a duty to relay accurate information about the property he is selling. Connell v. Davis, 06-9 (La.App.5th Cir.10/17/06), 940 So.2d 195, writs denied, 06-2810, 06-2839 (La.01/26/07), 948 So.2d 175,178. The duty extends to both vendor and purchaser. The broker could be held liable upon breach of this duty. Connell, supra.
The trial court’s findings are unchallenged by defendants and the evidence clearly support redhibition, a contractual warranty claim. Further, the evidence supports the trial court’s finding of liability for negligent misrepresentation against the seller, realtor, and broker, which arises ex delicto.
The trial court did not recognize defendant’s conduct as fraudulent. When De-LaCruz bought the house she had an inspection done by John Worthey, a certified expert. He informed both DeLaCruz and Mary Bamburg that there was no indication of mold, and the moisture problem was satisfactorily fixed. Thus, we have to give deference to the trial court’s conclusion of negligent misrepresentation rather than fraud.

Redhibition Damages

La. C.C. art 2545 states:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for |12the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney *1229 fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
In an action for rescission because of a redhibitory defect, the court may limit the remedy of the buyer to a reduction of the price where the defect in the thing sold is such as to merely diminish the value. La. C.C. art. 2541; Capitol City Leasing Corp. v. Hill, 404 So.2d 985 (La.1981). The trial court is afforded much discretion in determining the amount of reduction in the purchase price, and its award should not be modified absent a showing of clear abuse of that discretion. La. C.C. art. 2531; Kent v. Cobb, 35-663 (La.App.2d Cir.03/08/02), 811 So.2d 1206.
11sThe general rule for the measurement of damages in quanti minor-is, that is to reduce the purchase price due to the article’s defect, is the determination between the difference between the value of the defective thing' at the time of sale and the value warranted by the seller. Kent, supra. In the case of immovable property, the amount of the award due the buyer is the amount necessary to convert an unsound structure into a sound one. Dodd v. Tucker, 528 So.2d 644 (La.App. 2d Cir.1988).
According to the evidence, the Covington Circle home was purchased on October 29, 2004, from DeLaCruz for the price of $415,000. The Baileys lived in the house for more than seven years. Under these circumstances, the trial court did not abuse its discretion in applying a reduction in the selling price, rather than ordering rescission.
The trial court opined that the Baileys were inconveniently burdened by the necessary task and expense of repairing the structural, mold, and water damage and making the home sound. The Baileys presented evidence that they were required to spend the amount of $43,726.83 in repairs made on the house’s defects and an additional $66,164.83 for water intrusion/mold damage. The total damages were $109,891.68. The evidence supports the trial court’s award in redhibition, and it is affirmed.
In contract actions, mental distress damages are generally not recoverable. However, La. C.C. art. 2545 states that a seller who knows but fails to disclose defects may be liable for other damages. This would include nonpecuniary damages for mental anguish, aggravation, and inconvenience. A nonpecuniary loss means that which is known in continental doctrine as “dommage moral,” that is, damage of a moral nature which does not affect a | ^“material” or tangible part of a person’s patrimony. See Saul Litvinoff, Moral Damages, 38 La. L.Rev. 1 (1977).
The trial court determined to that De-LaCruz knew of the prior damage and failed to disclose it to the Baileys.
La. C.C. art.1988 provides in part:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a non-pecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
The Louisiana Supreme Court has held that recovery of a nonpecuniary loss can be granted in cases of redhibition, provided that the obligee proves that he intended *1230 to gratify a significant nonpecuniary interest in making the purchase; this is evident in the nature of the contract; and that the obligor either knew or should have known that failure to perform would cause a non-pecuniary loss to the obligee. Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992).
This court found that the buyer of defective mobile home was not entitled in a redhibitory action to nonpecuniary damages for mental anguish, aggravation, and inconvenience despite the bad faith of the seller. Neither the nature of contract nor the facts and circumstances surrounding the purchase demonstrated that the buyer purchased the mobile home for a significant nonpecuniary purpose even though the mobile home was purchased with the intention that it serve as their family’s primary residence. McGough v. Oakwood Mobile Homes, Inc., 84-091 (La.App.2d Oir.ll/01/00), 779 So.2d 798.
11fiIn the case sub judice, the trial court did not award nonpecuniary damages. Neither the contract nor the record supports a finding that plaintiffs had a significant nonpecuniary purpose even though the home was purchased with the intention that it serve as their family’s primary residence. Thus, plaintiffs’ redhibition claim against DeLaCruz did not make a showing for the remedy of mental anguish.

Tort Damages

The trial court found that the real estate agent, Mary Bamburg, was not an independent contractor but a servant of the real estate broker, Coldwell Banker. Thus, Coldwell Banker was vicariously liable for any negligence committed by Bam-burg in an action for tort damages. La. C.C. art. 2320. As stated, no answer to the appeal was lodged by defendants and the trial court’s conclusion as to vicarious liability is proper.
The trial court found negligent misrepresentation by Bamburg. Damages may be of several kinds: actual, physical damages already suffered (sometimes referred to as patrimonial damages) ... moral damages which often involve no true patrimonial loss and so are called extra-patrimonial damages such as humiliation, embarrassment, loss of enjoyment or companionship, pain and suffering. William E. Crawford, 12 La. Civ. L. Treatise, Tort Law 2 ed. (West 2009), § 3.6.
The record substantiates the trial court’s finding that plaintiffs did suffer a diminution in value of their property due to non-disclosure of prior problems with the house. As we have already found, there was no manifest error on the part of the trial judge in accepting the cost of making the house sound as the amount of diminution in value of plaintiffs property, that is, the l^cost to restore the house to the value originally warranted by the seller. In this case, that would be the entire cost of $109,891.66. The trial court was clearly in error in assessing against the agent and broker only the alleged mold damage. Thus, we reverse in that respect and find the agent and broker liable for the full amount of $109,891.66.
Under the general rule followed by the great majority of jurisdictions, if the defendant’s conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance. Moresi v. State Through Dept, of Wildlife and Fisheries, 567 So.2d 1081, 1095 (La.1990); William Prosser & K. Page Keeton, Handbook of the Law of *1231 Torts § 54, at 361 (5th ed.). Restatement (Second) of Torts § 436A. In our jurisprudence, there have been deviations from the general rule. Louisiana courts have found that a plaintiff may recover damages for unintentional or negligent infliction of genuine and serious emotional distress without physical injury. Moresi, supra; Beis v. Bowers, 94-0178 (La.App.4th Cir.01/19/95), 649 So.2d 1094, writ denied, 95-0429 (La.03/30/95), 651 So.2d 847. What these cases have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. Moresi, supra; William Prosser & K. Page Keeton, Handbook of the Law of Torts § 54, at 362 (5th ed.); W. Malone & L. Guerry, Studies in Louisiana Tort Law, 45 (1970); Robertson, supra at 292.
Under the circumstances of this case, there was no outrageous conduct by Bamburg. She was told of no mold problem and that the water intrusion |17issues were fixed. Further, there was no physical harm and the facts do not rise to the level of genuine and serious emotional distress. The trial court was not manifestly in error in denying mental distress damages.

Solidarity

Under Civil Code Article 2091, “[t]here is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.” When an obligation fulfills this definition and contains these ingredients, the obligation is in solido. Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981).
In Turner v. Massiah, 94-2548 (La.06/16/95), 656 So.2d 636, 639, the Louisiana Supreme Court stated:
The damage here, Stage 2 breast cancer, cannot be apportioned between the two tortfeasors because the damage is not severable; it is indivisible. If the damage, or injury, could have been divided into two parts, one part caused by one defendant and the other part caused by the other there would have been, in effect, two injuries. In that case, there having been two torts and two injuries, the question of two caps might have been present. In this case there were two torts but only one injury.
The court also noted that:
Apportioning or separating the injuries caused by one of the doctors from the injuries caused by the other simply cannot be done. “No ingenuity can suggest anything more than a purely arbitrary apportionment of such harm.” Id.
In the instant case, the realtor and broker are liable to the Baileys in tort for the full sum of $109,891.66 and the seller is liable in contract for the same amount. The negligence of each was therefore the legal cause of the entire harm. The damage is not severable; it is indivisible. Each defendant |iswas liable for all the damages caused. Lambert v. U.S. Fidelity & Guaranty Co., 629 So.2d 328 (La.1993).
Thus, all defendants are liable in solido for all damages.

Attorney fees

Plaintiff, Jack Bailey, is an attorney and represented the family in this litigation. He is asking for attorney fees on a 40% contingency basis. Of course, his substantive claims are considerably higher than was awarded.[3]
*1232 The Louisiana seller will not be liable for personal injury damages in redhibition unless the seller knew of the defect in the thing. If that is the case, the seller will also be negligent, but the redhibition claim will add liability for the buyer’s attorney’s fees. Thomas C. Galligan, Jr., Contortions along the Boundary Between Contracts and Torts, 69 Tul. L.Rev. 457 (1994).
However, see a not yet published opinion from the First Circuit, Richard v. McElroy, 12-1657 (La.App. 1st Cir.12/04/13), 2013 WL 6267752.
On the redhibition claim and against the seller, Laura DeLaCruz, we award attorney fees. There is no testimony chronicling the time spent in prosecuting this claim. Based on the record, we award in favor of the Baileys and against the seller, Laura DeLaCruz, the sum of $25,000 as legal fees.

Judicial Interest

[ 1flPlaintiffs claimed that the awards should be with judicial interest from the date of the sale. The trial court awarded judicial interest from the date of judicial demand. La. C.C- art 2545 provides where the sale is rescinded, the seller “is liable to the buyer for the return of the price with interest from the time it was paid.” In the case sub judice, the sale was not rescinded. The damages did not consist of a return of the purchase price but the cost of repairs to make the property whole. The trial court correctly set judicial interest from the date of judicial demand.

Conclusion

IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor plaintiffs, Jack and Toye Bailey, individually and on behalf of their minor children, and against Laura DeLaCruz, Mary Bamburg and Coldwell Banker, in solido, in the sum of $109,891.66 together with judicial interest from the date of judicial demand;
IT IS FURTHER ORDERED ADJUDGED AND DECREED that there be judgment in favor of plaintiffs, Jack and Toye Bailey, individually and on behalf of their minor children, and against Laura DeLaCruz in the sum of $25,000 as attorney fees with interest from date of judicial demand.
Costs are assessed to defendants.

. The spelling of the defendant’s name, Mary Bamburg, has been amended from the incorrect spelling of "Bamburgh” contained in the original pleadings.

. EIFS refers to Exterior Insulation and Finish System and is a type of exterior composite material.

. He is seeking $286,616.37 as attorney fees.