BROWN, C.J.
Plaintiff, Mildred Decker, appeals from a judgment partially dismissing her claims of fraud and redhibition related to the sale of a home that Decker purchased from Defendants, Merrill Melton and Paul Holloway. Plaintiff alleges that Defendants did not disclose that part of the home was susceptible to flooding prior to her purchase of the home. Decker sought reduction of the purchase price, damages, and attorney fees. For the following reasons, we affirm.
FACTS AND PROCEDURAL BACKGROUND
On April 17, 2014, Plaintiff and Defendants executed a cash sale deed whereby Plaintiff purchased Defendants' home at 2003 Chase Crossing, Shreveport, Louisiana ("the Property"). The sale was made with warranties. Defendants completed a property disclosure document prior to the sale wherein they answered "No" to the following questions:
(5) Has any flooding, water intrusion, accumulating, or drainage problem been experienced with respect to the land? If yes, indicate the nature and frequency of the defects at the end of this section.
(12) Has any structure on the property ever taken water by flooding (rising water or otherwise)? If yes, please give the *858 nature and frequency of the defect at the end of this section.
(31) Has there been property damage related to the land or improvements thereon, including, but not limited to, fire, windstorm, flood, hail, lightning, or other property damage?
Plaintiff purchased the property for $315,000. Plaintiff discovered in the spring of 2015 that the Property had allegedly previously "flooded" during Defendants' ownership of the Property.
Plaintiff alleged that she experienced "flooding" on the Property on five occasions after the sale.[1] According to Plaintiff, the flooding would occur in the enclosed patio area, which Plaintiff referred to as her "den," "TV room," "sunroom," and/or "enclosed patio." Plaintiff filed a petition alleging redhibition and fraud, claiming that she spent significant sums of money to repair damage caused by the flooding. Plaintiff also alleged that there were defects in the swimming pool that Defendants did not disclose and were not apparent by visible inspection. In the petition, Plaintiff sought rescission of the sale and an award of damages, attorney fees, and costs associated with the suit. Plaintiff later sought a reduction in the purchase price.
Plaintiff amended her petition to allege two further "flooding events" at her home,[2] and Plaintiff included a list of repairs and costs associated with the March, May, and June 2015 "flooding events." Plaintiff also alleged that the swimming pool leaked and had a broken heater, and that the pool sweep and sweep motor were broken. Defendants denied the allegations in their answer.
A three-day trial was held on April 25, 26, and 27, 2017, which included extensive testimony from Plaintiff, and the trial judge visited the Property the morning after a rainfall. The trial court provided extensive oral reasons for judgment on May 23, 2017. The trial court found in favor of Plaintiff with regard to the defective pool heater, granting her damages and attorney fees. The trial court dismissed the remaining claims. Plaintiff lodged the instant appeal.
DISCUSSION
Plaintiff's assignments of errors on appeal are: 1) whether the trial court erred in finding that the Property did not suffer from a redhibitory defect; 2) whether the trial court erred in finding that the Property was fit for its intended use; and, 3) whether the trial court erred when it failed to award damages. Defendants argue that the trial court correctly applied Louisiana laws on redhibition to the facts in this case.
The standard of review in cases regarding findings of fact is manifest error. In order to reverse the fact finder's determination of fact, the reviewing court must review the entire record and find that a reasonable factual basis does not exist for the finding, and determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Bailey v. Delacruz , 49,032 (La. App. 2d Cir. 06/16/14), 143 So.3d 1220.
The seller warrants the buyer against redhibitory defects, or vices, in the thing *859 sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price. La. C.C. art. 2520. The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things. La. C.C. art. 2521.
Apparent defects that could have been discovered by simple inspection are not redhibitory. McCarthy v. E & L Dev., Inc., 45,683 (La. App. 2d Cir. 11/10/10), 54 So.3d 1143, writ denied, 10-2739 (La. 02/04/11), 56 So.3d 979. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. Hancock v. Lauzon , 49, 535 (La. App. 2d Cir. 01/14/15), 161 So.3d 957. Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances made by the seller. Stuck v. Long , 40,034 (La. App. 2d Cir. 08/17/05), 909 So.2d 686, writ denied , 05-2367 (La. 03/17/06), 925 So.2d 546.
The buyer must give the seller notice of the existence of a redhibitory defect in the thing sold. That notice must be sufficiently timely as to allow the seller the opportunity to make the required repairs. A buyer who fails to give that notice suffers diminution of the warranty to the extent the seller can show that the defect could have been repaired or that the repairs would have been less burdensome, had he received timely notice. Such notice is not required when the seller has actual knowledge of the existence of a redhibitory defect in the thing sold. La. C.C. art. 2522. The thing sold must be reasonably fit for its ordinary use. When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose. La. C.C. art. 2524.
Susceptibility to flooding can be a redhibitory defect. Hancock, supra . Susceptibility to flooding is determined by the particular circumstances of each case and not solely by the fact of flooding. Id. While a house's susceptibility to flooding is a redhibitory defect, the mere fact that a house has flooded under extraordinary rainfall is not a redhibitory defect. Susceptibility, as that term is used, means a propensity, proneness or predisposition to flooding under normal conditions. Milazzo v. Harvey , 51,653 (La. App. 2d Cir. 01/10/18), 245 So.3d 346 ; Braydon v. Melancon , 462 So.2d 262 (La. App. 1st Cir. 1984). Redhibitory vices are those vices or defects which render a thing unfit for its intended use and which would have caused the buyer not to purchase the thing had he known of them. Benoit v. Ryan Chevrolet , 428 So.2d 489 (La. App. 2d Cir. 1982).
In its oral reasons for judgment, the trial court described its on-site visit to the Property, highlighting certain features of the Property. The visit was made the morning after a rainfall. The court observed neither standing water on the Property nor any evidence that water had *860 entered the patio area. The trial court noted that the Property "slopes drastically" downward from the rear of the Property toward the home, and that the swimming pool is "considerably higher" than the slab upon which the home sits. The trial court observed a channel drain cut into the sidewalk leading to the door of the patio, which appeared to the court to be the lowest point in the yard.
The trial court found that it would appear to any reasonably prudent person that the enclosed area is a patio. The original walls of the patio are covered in exterior brick, the doors leading into the master bedroom and office are exterior doors, and there is an elevation of a few inches at the threshold of each door. There is an outside water spigot protruding from the brick wall near the door leading to the master bedroom. The ceiling is plywood, not drywall. The walls enclosing the patio are made of brick on the bottom portion with sliding doors on the top portion.
The patio slopes down away from the doors to the master bedroom and office, and the patio floor is on the same level as the sidewalk leading to the outside patio and pool area. The trial court stated, "[Those] observations were done quickly and easily without moving anything [and] without the advice of an expert." The trial court found that the patio had originally been an uncovered patio. Plaintiff produced the original blueprints for the home which show that the area was originally built as an uncovered patio.
According to Defendants and Malcolm McMillan, who owned the Property prior to Defendants (from 2001 to 2011), there was no history of flooding on the Property. Plaintiff testified that she did not permanently move into the home until ten months after she purchased the home from Defendants, and she was unaware of any water intrusion issues during that time. Plaintiff testified that for the first several "flooding events" she did not open the wastewater valve on the pool, which was designed to drain the pool into the city sewerage system during a rainstorm and prevent the pool from overflowing. Plaintiff eventually learned how to engage the valve after the first several instances of water coming into the patio area.
McMillan testified that opening the valve was easy to do, it was obvious the pool was above the patio, and that a heavy rain would cause the pool to overflow into the patio if the valve was not engaged. The trial court found McMillan to be a credible and disinterested witness. The trial court also pointed out that Plaintiff testified that water had never entered the home past the enclosed patio area.
Plaintiff made much of the fact that Defendants experienced one incident during their ownership of the Property in which, while Defendants were out of town, the indoor/outdoor carpet near the outside door to the patio got wet. Melton testified that he believed the dampness was caused by wind blowing rain under the door to the patio. That incident does not amount to a flooding or drainage problem. As can be seen in submitted photos, the outside door to the patio is a glass door, the bottom of which is level with the sidewalk directly outside the door. The door is clearly not designed to keep water out of the patio area. The trial court found that the obvious intended purpose and design of the enclosed patio was just that of a patio, an area that was not designed to be watertight.
Joey French, Plaintiff's expert in civil engineering and drainage, testified that there were two 100-year storm events in March and April of 2016. The trial court took judicial notice that the Shreveport area had experienced an unusual amount of rainfall in the past few years, and Plaintiff *861 did not use the wastewater valve during some of those heavy storm events.
Further, Plaintiff testified that she had filed suit against two of her neighbors, alleging that they changed the natural flow of storm water, which caused excess water to flow onto the Property. The neighbors made alterations to their properties to restore the natural flow of water, and Plaintiff dismissed her suit against them. The trial court found that those alterations seemed to limit the flow of water onto the Property.
We see no reason to disturb the trial court's findings of fact regarding the alleged redhibitory defects related to water coming into the patio area of Plaintiff's home. Plaintiff's testimony was self-contradictory and hyperbolic at times. At one point in her testimony, Plaintiff suggested that Defendants should be held liable for the pool overflowing during her ownership of the Property. As the trial court found, it is clear to a reasonably prudent person that the patio was enclosed after the home was built, and that the patio floor slopes away from the home, with the sidewalk at the same level as the patio. The patio was designed so that rainwater would drain off the patio. The fact that water entered the patio once in 13 years neither renders the patio unfit for its intended purpose, nor does it amount to a redhibitory defect.
CONCLUSION
For the reasons stated, the judgment of the trial court is affirmed. All costs of appeal are assessed to Plaintiff.
AFFIRMED.

The dates for the five flooding events are March 12, 2015, May 18, 2015, May 21, 2015, June 18, 2015, and November 17, 2015.

The dates for these events are March 8, 2016, and March 9, 2016. Plaintiff also alleged that there were an additional three flooding events at trial. The dates for those events are April 18, 2016, April 19, 2016, and April 30, 2016.