Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,300-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHARLIE BOYTER                                    Plaintiff-Appellee

versus

MIKE ADDESSI & DAVID                              Defendant-Appellant
BOYTER

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 595,240

Honorable Brady D. O'Callaghan, Judge

* * * * *

JOHN FORD McWILLIAMS, JR.                         Counsel for Appellant

EDWARD M. CAMPBELL                                Counsel for Appellee

* * * * *

Before COX, HUNTER, and ELLENDER, JJ.

**HUNTER, J.**

Defendant, Mike Ardese,[1] appeals a trial court judgment awarding damages in the amount of $953 to plaintiff, Charlie Boyter, and awarding ownership of a 1990 GMC pickup truck. For the following reasons, we affirm the award of damages. We amend the judgment to correct the inadvertent error with regard to the pickup truck and, as amended, we affirm.

## FACTS

Plaintiff, Charlie Boyter, and defendant, Mike Ardese, are former friends. Plaintiff is the owner/operator of a radiator shop, and Ardese is the owner/operator of an automobile sales and collision shop. In the past, the parties assisted each other with labor and often shared equipment and resources. Defendant, David Boyter, is plaintiff's brother and was employed by Ardese.

Plaintiff's John Deere tractor was stored at Ardese's property for "secure storage and repair." Plaintiff also allegedly purchased a Dodge Ram pickup truck and stored it at Ardese's shop for repairs. However, Ardese claimed he purchased the pickup truck on behalf of his business, A & B Sales & Collision, LLC.

Unspecified issues arose between the parties, and their friendship dissolved. On September 10, 2015, plaintiff called the Caddo Parish Sheriff's Office and requested to have a deputy accompany him to Ardese's shop to retrieve the items he had stored there. These items allegedly

---

[1] In the petition for damages, defendant's name is spelled, "Mike Addessi." However, in his answer to the petition, he states his name as "Michael Carl Ardese." In the judgment, he is identified as "Mike Ardese." In conformity with the judgment, he will be identified as "Mike Ardese."

included the John Deere tractor, a GMC pickup truck, and a Dodge Ram pickup truck.

Plaintiff retrieved the tractor, and his son, Nathan Boyter, retrieved the GMC pickup truck. However, the Dodge Ram pickup truck was not retrieved from Ardese's property.

On September 8, 2016, plaintiff filed a lawsuit against Ardese and David Boyter ("David"), alleging he was entitled to monetary damages for additional damage to his John Deere tractor while it was in Ardese's care and custody for storage and/or repairs. According to plaintiff, Ardese caused additional damage to the tractor by allowing David to use it to mow the grass around the collision shop. Plaintiff alleged, "The inoperable condition of the tractor was both open and obvious and otherwise known to both of the defendants because the tractor was spewing hydraulic fluid and because both defendants knew the tractor needed repairs." Plaintiff also alleged Ardese was liable for his failure to repair and return to him the Dodge Ram pickup truck. More specifically, plaintiff alleged:

> [Ardese] failed to timely repair the truck and [Ardese] arranged for plaintiff to purchase the truck from its owner. [Ardese] was to keep the truck secure and make repairs to it. After buying the truck, plaintiff delivered to [Ardese] the title to the truck for safe keeping along with the truck in [Ardese's] premises. [Ardese] has refused to return this truck and title to plaintiff and has threatened violence if plaintiff comes to retrieve any more of his property from [Ardese's] premises.
>
> ***

Following a bench trial, the trial court awarded plaintiff damages in the amount of $953 "for the damage to his tractor caused by the use of the tractor and/or Mr. Ardese's failure to maintain it while in his care." The trial

court also declared Ardese the owner of the "inoperable 1990 GMC" pickup truck stored at Ardese's shop.[2]

Ardese appeals.

## DISCUSSION

Ardese contends the trial court erred in awarding a money judgment for damages to the John Deere tractor. He argues plaintiff did not establish he caused damage to the tractor or failed to exercise due care. He also asserts plaintiff did not introduce any evidence to establish what "diligence and prudence for the thing deposited that he uses for his own property." Ardese relies on La. C.C. art. 2930, which provides, in relevant part:

*** 

> When the deposit is gratuitous, the depositary is bound to fulfill his obligations with the same diligence and prudence in caring for the thing deposited that he uses for his own property. Whether the deposit is gratuitous or onerous, the depositary is liable for the loss that the depositor sustains as a result of the depositary's failure to perform such obligations.

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315(A). The standard of review in cases regarding findings of fact is manifest error. In order to reverse the factfinder's determination of fact, the reviewing court must review the entire record and find that a reasonable factual basis does not exist for the finding and determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So. 2d 557; *Bailey v. Delacruz*, 49,032 (La. App. 2 Cir. 6/16/14), 143 So. 3d 1220. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error or

---

[2] David Boyter did not answer the lawsuit, and a default judgment was entered against him on April 17, 2019.

3

clearly wrong standard demands great deference to the findings, for only the factfinder is cognizant of the variations in demeanor and tone of voice that bear on the listener's understanding of what is said. *Murray v. Bostwick*, 52,802 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1120.

In the instant case, plaintiff testified he stored the John Deere tractor at Ardese's shop, and he informed Ardese "the cylinders were leaking and need[ed] to be repaired." Plaintiff also testified he told Ardese, "Do not drive the tractor," and Ardese told him he "would fix it" if and when he used it. Plaintiff stated when he retrieved the tractor from Ardese's shop, "fluid was gushing out of the cylinders," and the hydraulic fluid was "full of water." According to plaintiff, such a leak could damage the bearings and clutches and "mess up the pistons and the hydraulic pump." Plaintiff testified he customarily maintained his equipment, and whenever something needed to be repaired, the equipment "was parked until [it] was fixed." Plaintiff further testified when he learned his tractor was being used in its state of disrepair, he decided to retrieve all of his equipment from Ardese's shop. According to plaintiff, he received an estimate of "over $4,000" to "replace the pump, the filters, the hydraulic fluid, to flush all the water and trash and dirt out of it, and clean it up and put it back together."

During his testimony on cross-examination, plaintiff admitted hydraulic fluid was leaking from the tractor before he stored it at Ardese's shop. However, he stated the fluid was "clear" when he stored the tractor, but it was "white" when he picked it up. Plaintiff also stated he saw his brother, David, operating the tractor, and he knew the "bush hog" apparatus was being utilized because "it was turning with grass coming out from under

4

it." Further, plaintiff reiterated he had stopped using the tractor due to the hydraulic leak prior to parking it at Ardese's property.

Ardese testified plaintiff stored the John Deere tractor behind a locked gate at his shop "for safekeeping" due to incidents of theft and vandalism at plaintiff's shop. He also stated the tractor at issue was operable but "in bad disrepair," and plaintiff had been using it in its condition "for years." Ardese further testified he was aware the tractor had been leaking hydraulic fluid for a number of years. Additionally, Ardese testified he obtained an estimate for the repair of a hydraulic pump for $550. He stated he acquired the estimate because the estimate submitted by plaintiff "was way out of range on actual costs."

Ardese denied operating the tractor or allowing David to operate the tractor. He stated he never instructed anyone to use the tractor, and he never saw David operating it. Ardese testified David told him he moved the tractor from the front of the shop to the back of the shop. According to Ardese, David did not know how to operate the bush hog to cut grass.

Taylor Boyter, plaintiff's son, testified he had used the tractor in the past, and he was aware it was leaking hydraulic fluid. He stated he and Kerry Krews repaired the tractor after it was returned to plaintiff's shop. With regard to the condition of the tractor after it was returned to plaintiff, Taylor testified as follows:

> Several leaks and seals on the tractor were leaking. A lot of dry rot. And there was, you know, just, it needed some – it needed some definite upkeep. It needed hydraulic fluid changed. It had a very weak hydraulic system. *** So, the fluid was probably over fifty (50%) water, if I had to guess.
> ***

5

The tractor had been used and it had been very poorly maintained. It had no, absolutely no upkeep. [I]t had not been taken care of.

***

Taylor testified Kerry Krews' estimate on the repairs to the tractor "was over the thousand-dollar mark"; however, he was uncertain of the exact amount of the estimate. Additionally, Taylor testified while the tractor was stored at Ardese's shop, he noticed "it moving around several times." Although he testified he never saw anyone using the tractor, he noticed it was parked in different locations, and he had observed "fresh grass on deck."

Nathan Boyter, plaintiff's other son, testified at trial. He stated the tractor "was in good working standing" before it was stored at Ardese's shop. However, the tractor was returned to plaintiff with "some significant hydraulic leaks and problems." On cross-examination, Nathan admitted he had not driven the tractor since he was approximately 10 years old, and he did not know the condition of the tractor when it was stored at Ardese's shop.

Anthony Crawford testified he accompanied Ardese when he picked up the tractor from plaintiff in approximately 2014. He testified plaintiff "had to fill [the tractor] with some fluid to get it to operate" just to drive it onto the trailer. Crawford also testified the tractor had hydraulic fluid "leaking out" prior to being stored on Ardese's property.

Mike Ferguson testified he had been a tractor mechanic more than 40 years, and he was familiar with John Deere tractors. He stated, "Everything works off the hydraulic pump: steering, brakes, three-point lift, front end loader. If the pump is not working, nothing works." According to Ferguson,

6

it is a common occurrence for water to become mixed with hydraulic fluid on a tractor, and "99% of the time," the tractor would work "fine." He stated mixing water in the hydraulic fluid would not necessarily cause the hydraulic pump to fail. Ferguson also testified he had "no doubt" the hydraulic pump was operational when the tractor was transported from Ardese's property to plaintiff's property. Ferguson testified the hydraulic pump had to have been working because "the power steering cylinder was pouring oil out of each end of the cylinder. If the pump is not working, it can't do that." He stated a person could continue to pour hydraulic fluid into the tractor to get it to operate. However, "sooner or later, you would burn the [hydraulic] pump up."

Ferguson estimated it would cost $953 to replace the hydraulic "pump, the UPS charges, the labor, and hydraulic oil." He stated his estimate did not include an original John Deere pump, but rather "an aftermarket OEM" quality part. He explained an OEM part "would be better quality than the John Deere part." Ferguson opined plaintiff's $2,500 estimate to replace the pump was "just outrageous." During cross-examination, Ferguson testified it would take approximately "an hour, hour and a half as bad as it was leaking" to completely run out of hydraulic fluid.

After hearing the testimony, the trial court found plaintiff was entitled to damages in the amount of $953, for additional damage to the tractor while in Ardese's care. The trial court stated:

> The parties stipulated that Mr. David Boyter was seen operating the tractor, although there was some dispute whether this was to move it or, if used to mow grass, how much grass was mown. The evidence was also clear that Mr. Ardese had hired Mr. David Boyter as a general-purpose employee to "help him out" and perform routine

tasks around his property.  Evidence adduced was also sufficient to establish that use in this manner while the tractor was in disrepair would almost certainly result in additional damages to the tractor, although it is incredibly difficult to determine the extent and nature of the damages.  The court also found Taylor Boyter very credible in his observations of the condition of the tractor from time to time and the presence of fresh grass on the cutting deck, which suggested use rather than merely moving the tractor.

***

Mike Ferguson was impressively knowledgeable about the type of tractor at issue and tractor repair in general.  He indicated an estimate of $953.00 for the repairs identified by Mr. Boyter and indicated that the estimate provided by plaintiff was outrageous.

Trial courts are afforded great difference in making credibility calls, and the trial court was in the best position to evaluate the tone and demeanor of the witnesses as they testified.  It is apparent from the judgment and the reasons assigned that the trial court found plaintiff's testimony credible with regard to the use of the unrepaired tractor while in Ardese's possession and the resulting additional damage to the tractor.  Further, the trial court was entitled to infer, from the evidence and testimony submitted, Ardese did not "fulfill his obligations with the same diligence and prudence in caring for the [tractor] that he uses for his own property."  After reviewing the record as a whole, we do not find the trial court's determination was manifestly erroneous.  Consequently, we find the trial court was not clearly wrong in concluding David's use of the tractor, while in Ardese's care, resulted in additional damage to the tractor.  Accordingly, we find the trial court did not abuse its discretion in awarding to plaintiff $953 in damages.

Ardese also contends the trial court erred in awarding to him ownership of a 1990 GMC pickup truck.[3] Ardese argues the trial court committed a factual error because the pickup truck in dispute is a Dodge Ram, not a GMC, and the actual owner of the title to the truck is A & B Auto Sales and Collision Repair, rather than Mike Ardese.

In his petition for damages, plaintiff described the truck as a "8-49 Dodge Ram Pickup truck with serial number 1B7ME3683LS603955," and the photographs introduced into evidence depicted a Dodge Ram pickup truck. Ownership of the truck was contested at trial, with both plaintiff and defendant asserting they purchased the truck. After reviewing the evidence, the trial court concluded, "[T]he evidence and testimony presented at trial was contradictory, and that the title becomes, in the court's estimation, the best evidence of ownership of the truck."

Our review of the record reveals the title of the 1990 Dodge pickup truck was assigned to A & B Auto Sales & Collision, LLC on September 12, 2012. The title was signed by the seller, Wilton Earl Wisby, and by Michael C. Ardese, on behalf of the buyer, A & B Auto Sales & Collision, LLC. The record also demonstrates on September 13, 2019, the Louisiana Department of Motor Vehicles issued a certificate of title and registration certificate of the Dodge pickup truck, bearing the vehicle identification number "1B7ME3683LS603955." The owner of the title and registration was listed as "A & B Auto Sales & Collision."

---

[3] Ardese testified plaintiff stored a GMC pickup truck on his premises, and the truck remained on his property "for a number of years" until plaintiff sent his son to retrieve the GMC. Ownership of the GMC was not in dispute.

Our review title of the truck in dispute reveals the trial court erred in awarding ownership of a *GMC* pickup truck to Ardese, rather than awarding ownership of the *Dodge* pickup truck to the titled owner, A & B Auto Sales & Collision, LLC. Accordingly, we hereby amend the trial court judgment to correct the inadvertent error made by the trial court and recast the relevant portion of the judgment to award ownership of the 1990 Dodge pickup truck to A & B Auto Sales & Collision, LLC. As amended, we affirm the judgment.

Plaintiff filed an "Appellee Reply Brief," but he did not file an answer to the appeal. Nevertheless, he argues the trial court manifestly erred in awarding ownership of the truck to Ardese and in awarding only $953 in damages to plaintiff. He urges this Court to "reverse the judgment of the trial court awarding the GMC pickup to Mike Ardese, award the Dodge truck to Charlie Boyter, amend the judgment to reflect the costs of John Deere replacement part and labor in the amount of $4,159.91"

La. C.C.P. art. 2133 provides:

A. An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.

B. A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme

court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.

Essentially, an "answer to an appeal" is itself an appeal, except that the answer must specifically state the relief requested, while an appeal usually seeks review of all parts of the judgment. *Bernard v. BFI Waste Serv., LLC*, 2020-636 (La. App. 3 Cir. 7/21/21), 325 So. 3d 415, *writ denied*, 2021-01271 (La. 11/17/21), 327 So. 3d 995; *State ex rel. Guste v. Pickering,* 365 So. 2d 943 (La. App. 4 Cir. 1978), *writ denied*, 366 So. 2d 556 (La. 1978). Generally, an answer to an appeal operates as an appeal only of those parts of the judgment complained about in the answer. *Bernard, supra*; *Liedtke v. Allstate Ins. Co.,* 405 So. 2d 859 (La. App. 3 Cir. 1981), *writ denied*, 407 So. 2d 748 (La. 1981).

Herein, the proper procedure for an appellee to request modification, revision, or reversal of a judgment is to either file an answer to the appeal or a cross appeal. La. C.C.P. art. 2133; *Garsee v. Sims*, 54,832 (La. App. 2 Cir. 1/11/23), 355 So. 3d 1149, *writ denied*, 23-00407 (La. 6/21/23), 362 So. 3d 428; *Wied v. TRCM, LLC*, 30,106 (La. App. 2 Cir. 7/24/97), 698 So. 2d 685. Plaintiff's brief constitutes neither. Therefore, this Court will not consider plaintiff's requests because to do so would result in a modification, reversal, or revision in favor on a non-appealing party, contrary to Louisiana law. See, *Latour v. Steamboats, LLC*, 23-00027 (La. 10/20/23), 371 So. 3d 1026.

## CONCLUSION

For the reasons set forth herein, we hereby affirm the trial court's judgment awarding damages in the amount of $953 to plaintiff. We amend the judgment to award ownership of the 1990 Dodge pickup truck to the

titled owner, A & B Auto Sales & Collision and as amended, affirm.  Costs of the appeal are assessed to defendant, Mike Ardese.

**AFFIRMED; AMENDED, AND AS AMENDED, AFFIRMED.**